FLOYD MIDDLETON, APPELLEE, V. LLOYD NICHOLS ET AL.,
APPELLANTS, IMPLEADED WITH LOIS L. NICHOLS, APPELLEE.
132 N. W. 2d 882

Filed February 5, 1965. No. 35837.

Stubbs & Metz, for appellants.

Neighbors, Danielson & Van Steenberg and Bern R. Coulter, for appellee Middleton.

Heard before WHITE, C. J., CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ.

CARTER, J.

Plaintiff commenced this action to recover damages for personal injuries sustained in an automobile-pedestrian accident.

At the close of plaintiff's evidence defendants moved for a directed verdict, which was overruled except as to the defendant Lois L. Nichols. At the close of defendants' evidence plaintiff moved for a directed verdict which was also overruled. The case was submitted to a jury, which failed to arrive at a verdict and the jury was discharged. The remaining defendants then moved

for judgment notwithstanding the verdict, which was overruled. The plaintiff also moved for a judgment notwithstanding the verdict, which was overruled. The defendants Lloyd Nichols and Rolland Nichols have perfected an appeal to this court. No cross-appeal was taken by the plaintiff. The basic issue is whether or not the appellants were entitled to judgment as a matter of law.

The plaintiff Floyd Middleton will hereafter be referred to as Floyd. Floyd's brother, John Middleton, will be referred to as John. John's wife, Margaret Middleton, will be referred to as Margaret. The defendant Rolland Nichols will be referred to as Rolland, and his father, Lloyd Nichols, as Lloyd.

The accident occurred on March 4, 1961, at about 7 p.m. It was dark and automobiles were moving over the highway with their headlights burning. The accident occurred on a graveled country road north of Bridgeport, Nebraska. The surface of the road was dry and hard. The road was about 24 feet wide, straight, and practically level. The road was described as "washboardy."

At about 7 p.m., John was driving north in his pickup truck, followed by his brother Floyd, also driving a pickup truck. John drove off the road. John and Floyd drove Floyd's pickup to John's home and returned with his truck to pull the pickup out of the borrow pit. Margaret came back with them. In the first attempt to pull the pickup back on the highway, the chain was broken and the 2 or 3-foot section broken off was discarded. The chain was again fastened to the pickup and the pickup pulled from the borrow pit. The truck was stopped on the right side of the highway, 50 or 60 feet north of the point where the pickup had gone into the ditch. The pickup, also facing north, was behind the truck a distance of 7 feet 8 inches, its left rear corner extending over the center of the road approximately 1 foot. The headlights on the truck and pickup were burning.

Plaintiff's evidence shows that Floyd and Margaret were standing at the side of the pickup shortly before the accident. Margaret started north to close the left cab door of the truck. She observed the headlights of a car coming from the north. Realizing she had misjudged its distance or speed, she stepped between the truck and the pickup to permit the approaching car to pass. At the same time Floyd turned south to find the piece of discarded chain. He testified that he remembers little about the accident. There was evidence that the automobile struck Floyd with its left front fender and that it scooped him onto the fender and carried him some distance. He was 71 feet south of the pickup after the accident and 3 feet 6 inches from the east edge of the road. The car stopped from 100 to 125 yards south of the pickup. There is evidence that the car was traveling 50 miles per hour when it passed the pickup. Floyd's cap and glasses were found very close to the center of the road about 16 feet south of the pickup. There is evidence that tracks of the car after passing the pickup turned to the east across the center of the road.

Rolland was the driver of the car approaching from the north. There is evidence by Rolland and his witnesses which conflicts with that of plaintiff's witnesses. Rolland testified that he saw the headlights of the truck, that he slowed down to 20 or 25 miles per hour, that he saw the open door of the truck and observed Margaret standing between the truck and the pickup, and that he did not see Floyd until the instant of the impact. He does not know whether Floyd was walking or standing still, or where he was with reference to the center of the road except that he was in his direct line of vision. He said that the headlights were not burning on the pickup, and he does not know how close he was to the pickup when passing it. There is other disputed evidence in the record that bears little relation to the issue presented.

There are issues of fact, upon which the evidence is in conflict, that are for the determination of a jury.

It is for the jury to determine from all the facts and circumstances whether or not Rolland was driving at a speed that was reasonable and proper under the existing situation, whether or not he had his automobile under proper control, whether or not he kept a proper lookout, and whether or not he was negligent in driving to the east side of the center of the road while it was occupied by plaintiff.

In considering a motion for a directed verdict or a motion for judgment notwithstanding the verdict for the purpose of considering the correctness of the trial court's ruling thereon, the motion must be treated as an admission of the truth of all material and relevant evidence submitted on behalf of the party against whom the motion is directed, and that party is entitled to have every controverted fact resolved in his favor and to have the benefit of every inference that can reasonably be deduced from the facts in evidence. This is a long established rule of this court. Barry v. Dvorak, 176 Neb. 375, 126 N. W. 2d 226; Krepcik v. Interstate Transit Lines, 152 Neb. 39, 40 N. W. 2d 252; Parks v. Metz, 140 Neb. 235, 299 N. W. 643.

In cases where reasonable minds may differ as to whether or not the operator of a motor vehicle exercised the care, caution, and prudence required of him under the circumstances of the particular situation, the issue of negligence on the part of the operator is one of fact to be determined by a jury. Fulcher v. Ike, 142 Neb. 418, 6 N. W. 2d 610; Miers v. McMaken, 147 Neb. 133, 22 N. W. 2d 422.

The facts in this case require that the determinations made in the following cases be applied here: Nisi v. Checker Cab Co., 171 Neb. 49, 105 N. W. 2d 523; Anderson v. Nincehelser, 152 Neb. 857, 43 N. W. 2d 182; Floyd v. Edwards, 150 Neb. 41, 33 N. W. 2d 555.

We conclude that the evidence of the plaintiff, if believed by the jury, is sufficient to sustain a verdict for the plaintiff. In such a situation the question is for the

jury and defendants are not entitled to a directed verdict nor a judgment notwithstanding the verdict. The trial court having arrived at this same conclusion, its rulings denying plaintiff's motions for a directed verdict and for a judgment notwithstanding the verdict are correct. The orders of the trial court are correct and they are affirmed. The cause is remanded to the district court for further proceedings.

AFFIRMED.