FARM BUREAU LIFE INSURANCE COMPANY, A CORPORATION, APPELLANT, V. ALVIN J. LUEBBE, PERSONAL REPRESENTATIVE OF THE ESTATE OF WANDA L. LUEBBE, DECEASED, APPELLEE.

358 N.W.2d 754

Filed November 30, 1984.    No. 84-093.

Eugene P. Welch of Gross, Welch, Vinardi, Kauffman & Day, P.C., for appellant.

Con M. Keating of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

CAPORALE, J.

Plaintiff-appellant, Farm Bureau Life Insurance Company, a corporation, petitioned for a declaration that a policy of life insurance it had issued provides no coverage for the air crash death of the named insured, Duane A. Luebbe. Alvin J. Luebbe, the defendant-appellee and personal representative of the named beneficiary, the insured's wife, Wanda L. Luebbe, who died as a result of the same crash, counterclaimed, seeking payment of the policy proceeds and an attorney fee. Trial was had to a jury, which returned a verdict in favor of the personal representative both on Farm Bureau's petition and on the personal representative's counterclaim. A judgment was entered in accordance with the verdict. In this appeal Farm Bureau assigns three errors to the trial court in (1) failing to sustain Farm Bureau's motion for a directed verdict made at the close of all the evidence and in failing to sustain its motion for judgment notwithstanding the verdict, (2) instructing the jury that Farm Bureau had the burden of proving the insured's intent to deceive, and (3) awarding the personal representative an attorney fee under an unconstitutional statute. We find each assignment to be without merit and affirm.

Farm Bureau, through its agent, John Clabaugh, first sold a $500,000 30-year decreasing term life insurance policy to Duane A. Luebbe, hereinafter called Luebbe, in the fall of 1979. Because Luebbe had previously flown 45 hours as a student

pilot and because his father ran an aerial spraying business, this policy did not cover his death if it were to result from the crash of an airplane on which he was a member of the crew in any capacity.

In the fall of 1981 Clabaugh contacted Luebbe, suggesting that the 1979 policy be changed to an annual renewable term policy. It was decided at this time that an effort be made to have the aviation exclusion removed. Luebbe first filled out a regular policy application on October 13, 1981. Later, on October 22, 1981, he signed an aviation supplement at the request of Farm Bureau's home office. After reviewing both of these application documents, Farm Bureau issued the annual renewable term policy in the amount of $500,000, insuring Luebbe without an aviation exclusion and naming his wife as the beneficiary. This 1981 policy is the policy in question. Both Mr. and Mrs. Luebbe were killed on September 26, 1982, when the plane Luebbe was piloting crashed.

As part of its investigation following the crash, Farm Bureau discovered that Luebbe's logbook indicated he had taken an approximately 48-minute plane ride on September 21, 1981, less than a month before he answered negatively to the following question upon applying for the 1981 policy: "Has any person proposed for coverage: . . . Made any aerial flights in the past two years or contemplate such flights, other than as a civilian passenger?"

Further investigation revealed that the September 21 flight had taken place with one Louis Nigro, a flight instructor who actually made the entry in Luebbe's logbook indicating the flight had taken place. The printed remarks in the logbook read: "Instructor should enter in this column the nature of each maneuver in which instruction is given, and the time spent thereon, and shall attest each such entry with his initials, pilot certificate number, and pertinent rating." There follows in that column, in Nigro's writing: "Basics, C & D turns, LD. L. Nigro 507665532 CFI." Nigro testified that he did not remember the flight with Luebbe and was only reciting what the logbook indicated. When questioned by Farm Bureau's counsel if Luebbe was the one "accomplishing the climbing and descending turns, and the landing," Nigro replied: "It could be

that he was and it could be that I was assisting him or I was demonstrating them to him." Nigro further testified that the "flight instructor is always the pilot in command," and a person is "not considered a student pilot until they pass a medical" examination under the FAA rules.

There was also evidence of Luebbe's reputation for truthfulness and further evidence that he only became reinterested in flying after a convention in Las Vegas, Nevada, in December 1981 when he and a couple of friends flew over Death Valley in a plane one friend rented and piloted. Evidence was adduced from Luebbe's brother and father that after 1976 Luebbe expressed no desire to fly. It seems that Luebbe lost interest in flying as a pilot when, in 1976, he had difficulty landing safely in a direct crosswind. However, the Death Valley experience reawakened his desire to fly. This testimony corresponds with Luebbe's logbook, which indicates that on December 17, 1981, he began making numerous flights, culminating in the receipt of a pilot's license in February 1982.

Farm Bureau's contention is that Luebbe made a material misrepresentation of fact when he stated in the 1981 insurance application that he had made no aerial flights in the past 2 years nor contemplated such flights, other than as a civilian passenger.

The rules of law applicable to Farm Bureau's first assignment of error are that on a motion for a directed verdict, the moving party is deemed to have admitted as true all the material and relevant evidence admitted which is favorable to the party against whom the motion is directed, and, further, the party against whom the motion is directed is entitled to the benefit of all proper inferences which can reasonably be deduced therefrom. *AgriStor Credit Corp. v. Radtke, ante* p. 386, 356 N.W.2d 856 (1984); *Flakus v. Schug,* 213 Neb. 491, 329 N.W.2d 859 (1983). The same rules apply when the trial judge considers a motion for judgment *non obstante veredicto.* *Middleton v. Nichols,* 178 Neb. 282, 132 N.W.2d 882 (1965).

Correspondingly, in determining the sufficiency of the evidence to sustain a verdict, the evidence must be considered most favorably to the successful party, every controverted fact must be resolved in his favor, and he is entitled to the benefit of

any inferences reasonably deducible from it. *Pioneer Enterprises v. Edens*, 216 Neb. 672, 345 N.W.2d 16 (1984); *Havelock Bank of Lincoln v. Bargen*, 212 Neb. 70, 321 N.W.2d 432 (1982). A jury's verdict will not be disturbed unless it is clearly wrong. *Kresha v. Kresha*, 216 Neb. 377, 344 N.W.2d 906 (1984); *Ellis v. Far-Mar-Co*, 215 Neb. 736, 340 N.W.2d 423 (1983).

There is evidence from which the jury need not but could reasonably deduce that during his flight with Nigro less than a month before the application, Luebbe was nothing other than a civilian passenger. Nigro's testimony was it "could be" that Luebbe had flown the plane himself once it was in the air, or it "could be" that Nigro had. The logbook entry itself does not recite who piloted the plane, only that instruction was given. This equivocal evidence, combined with the other evidence concerning Luebbe's rekindled interest in aviation only after he applied for the policy in question, is such as to allow the jury to properly find that Luebbe truthfully stated he had made no aerial flights other than as a civilian passenger in the 2 years prior to signing the relevant application documents. The foregoing evidence, notwithstanding the logbook entry, is also such that the jury need not but could reasonably deduce that Luebbe contemplated no such flights as of the date of the application.

Although other finders of fact might reasonably conclude otherwise, the jury could, under one view of the evidence, properly find that Luebbe made no misrepresentation. Its finding was therefore not clearly wrong, and the trial court was correct in overruling Farm Bureau's motion for a directed verdict as well as its motion for judgment notwithstanding the verdict.

The next assignment of error complains that the trial court's instructions to the jury improperly imposed upon Farm Bureau the burden of proving that any misrepresentation made by Luebbe was made with the intent to deceive the insurer. The position of Farm Bureau is that only when an insured has made a misrepresentation as to a matter of opinion, as distinguished from a matter of fact, is intent required. We have, unquestionably, held that where a matter of opinion is involved,

coverage is defeated only when an intent to deceive was present. *Muhlbach v. Illinois Bankers Life Ass'n*, 108 Neb. 146, 187 N.W. 787 (1922). That is not to say, however, that when a misrepresentation of fact is involved, an intent to deceive is not required in order to defeat coverage.

Indeed, the recent case of *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982), clearly establishes that our case law does not support Farm Bureau's contention. Therein, the insured made a misrepresentation of fact in an application for sickness and accident insurance by denying the existence of a material and significant past medical history. We affirmed the dismissal of the insured's claim following a bench trial. In doing so, we held, as required by *Zimmerman v. Continental Cas. Co.*, 181 Neb. 654, 150 N.W.2d 268 (1967), that the provisions of Neb. Rev. Stat. § 44-710.14 (Reissue 1978), applying only to sickness and accident insurance, were to be read in pari materia with the provisions of Neb. Rev. Stat. § 44-358 (Reissue 1978), applying to all insurance policies. Section 44-710.14 provides that a misrepresentation which materially affects either acceptance of the risk or the hazard assumed by the insurer defeats coverage. Section 44-358 provides that a misrepresentation which exists at the time of, and contributes to, the loss and which deceives the insurer to its injury defeats coverage. We then held that in order to defeat coverage on the basis of fraud, the insurer "must plead and prove, among other things, that the misrepresentations were made knowingly with intent to deceive, that the insurer relied and acted upon such statements, and that the insurer was deceived to its injury." 212 Neb. at 905, 327 N.W.2d at 609-10. Accord, *Mutual Benefit Life Ins. Co. v. Chisholm*, 213 Neb. 301, 329 N.W.2d 103 (1983). To be sure, the nature of a false statement may be such that the trier of fact may infer from the mere making of the statement that it was made knowingly with the intent to deceive. *White v. Medico Life Ins. Co., supra*.

The trial court correctly instructed the jury; accordingly, Farm Bureau's second assignment of error fails.

This leaves the third, and final, assignment of error, which argues that Neb. Rev. Stat. § 44-359 (Reissue 1978), allowing the award of an attorney fee to a successful claimant against his

insurer but not to a successful insurer against its insured, denies insurers equal protection of the law and is therefore unconstitutional.

Section 44-359 provides:

> In all cases where the beneficiary, or other person entitled thereto, brings an action upon any type of insurance policy except workmen's compensation insurance, or upon any certificate issued by a fraternal beneficiary association, against any company, person or association doing business in this state, the court, upon rendering judgment against such company, person or association, shall allow the plaintiff a reasonable sum as an attorney's fee in addition to the amount of his recovery, to be taxed as part of the costs. If such cause is appealed, the appellate court shall likewise allow a reasonable sum as an attorney's fee for the appellate proceedings; *Provided*, that if the plaintiff shall fail to obtain judgment for more than may have been offered by such company, person or association in accordance with section 25-901, then the plaintiff shall not recover the attorney's fee provided by this section.

In determining the constitutionality of this statute, we must bear in mind several rules. To begin with, the party attacking a statutory classification must carry the burden of showing that the classification does not rest on any reasonable basis. *State v. Davison*, 213 Neb. 173, 328 N.W.2d 206 (1982). When no fundamental rights or suspect classification is affected, as is the case here, the "Equal Protection Clause of the Fourteenth Amendment requires only that the state law be shown to bear some rational relationship to legitimate state purposes." *Parker v. Roth*, 202 Neb. 850, 861, 278 N.W.2d 106, 113 (1979), *cert. denied* 444 U.S. 920, 100 S. Ct. 240, 62 L. Ed. 2d 177, *reh'g denied* 444 U.S. 1104, 100 S. Ct. 1072, 62 L. Ed. 2d 790 (1980); *San Antonio School District v. Rodriguez*, 411 U.S. 1, 93 S. Ct. 1278, 36 L. Ed. 2d 16 (1973).

Further, *State v. Sprague*, 213 Neb. 581, 330 N.W.2d 739 (1983), states that a statute may discriminate in favor of a certain class if the discrimination is founded upon a reasonable distinction, or difference in state policy, or if any state of facts

can reasonably be conceived which would sustain the classification.

Farm Bureau attacks § 44-359 as containing the following unconstitutional classifications:

(1) The allowance of a fee on an action upon any type of insurance policy except workmen's compensation or a certificate issued by a fraternal beneficiary association.

(2) The lack of a provision which would allow an attorney fee in favor of the insurer in the event of its success in bringing the action or in defending the action brought against it.

(3) The arbitrary subjection of insurance companies to a liability for an attorney fee when other defendants in other classes of *contract* cases are not subject to such burden.

(4) The arbitrary subjection of insurance companies to a liability for an attorney fee when other defendants in othed [sic] classes of cases are not subject to such burden.

Brief for Appellant at 25.

After examining numerous cases dealing with the constitutionality of attorney fee statutes in the context of insurance claims, many of which are collected at Annot., 73 A.L.R.3d 515 (1976), we conclude that none of these classifications are so arbitrary as to violate either the equal protection clause of the fourteenth amendment to the U.S. Constitution or the special law clause of article III, § 18, of the Nebraska Constitution.

As far back as 1900, in *Lancashire Ins. Co. v. Bush*, 60 Neb. 116, 82 N.W. 313 (1900), this court upheld the constitutionality of the attorney fee statute then in force. That statute provided for the recovery of an attorney fee from an insurer when the insured prevailed on a property damage claim, and was upheld on the theory that property insurers "have been long accustomed to vexatiously and oppressively resisting payment of claims arising under their policies." *Id*. at 124, 82 N.W. at 315.

This same statute was upheld by the U.S. Supreme Court 3

years later in *Farmers' &c. Ins. Co. v. Dobney*, 189 U.S. 301, 23 S. Ct. 565, 47 L. Ed. 821 (1903). The insurer in *Dobney* contended that equal protection was violated because insurers were liable for attorney fees when other defendants were not; because if the insurer was successful, no attorney fee would be given; and because the statute only applied to property insurers. These arguments are noticeably similar to the ones now made by Farm Bureau. The U.S. Supreme Court rejected each of these arguments, holding that "contracts of insurance from their very nature are susceptible of classification, not only apart from other contracts, but from each other . . . ." *Id.* at 305.

In 1934 the U.S. Supreme Court dealt with the attorney fee issue in the context of a life insurance policy in *Life & Casualty Co. v. McCray*, 291 U.S. 566, 54 S. Ct. 482, 78 L. Ed. 987 (1934). The statute upheld in *McCray* is similar to the current Nebraska statute in that an attorney fee is automatically awarded even if the insurer resisted payment in good faith and upon reasonable grounds. The Court found this to be of no consequence, since "[o]ne who refuses to pay when the law requires that he shall, acts at his peril, in the sense that he must be held to the acceptance of any lawful consequences attached to the refusal. It is no answer in such circumstances that he has acted in good faith." *Id.* at 574. The U.S. Supreme Court also held there was no unconstitutional classification, since diverse social needs made it proper to only charge insurers with their successful opponents' attorney fees. These social needs cited by the Court are just as persuasive now as they were then.

> Dependents left without a breadwinner will be exposed to sore distress if life insurance payments are extracted slowly and painfully, after costly contests in the courts. Health and accident insurance will often be the sources from which the sick and the disabled are to meet their weekly bills. Fire insurance moneys, if withheld, may leave the business man or the householder without an office or a home. Classification prompted by these needs is not tyrannical or arbitrary.

*Id.* at 569-70.

Cases from other jurisdictions, such as *Brandywine Shoppe, Inc. v. State Farm Fire & Cas. Co.*, 307 A.2d 806 (Del. Super.

Ct. 1973), and *Feller v. Equitable Life Assur. Soc.*, 57 So. 2d 581 (Fla. 1952), in upholding their attorney fee statutes against equal protection attacks, found it persuasive that the field of insurance has traditionally been subject to state regulation.

> The business of insurance is affected with a public interest as much as any other business conducted in the United States. Such business is subject to reasonable regulation in the public interest. It is an undue hardship upon beneficiaries of policies to be compelled to reduce the amount of their insurance by paying attorney's fees when suits are necessary in order to collect that to which they are entitled.

57 So. 2d at 586.

Contrary to the contention of Farm Bureau, the reasoning of the above cases is still valid; § 44-359 continues to bear a rational relationship to a legitimate state interest.

The personal representative of the estate of Wanda L. Luebbe, deceased, is awarded the sum of $1,500 for the services of his attorney in this court.

AFFIRMED.