IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**


RAMOS V. FARMERS INSURANCE


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


VANEZA RAMOS, APPELLANT,

V.

FARMERS NEW WORLD LIFE INSURANCE COMPANY
AND MICHAEL POWERS, APPELLEES.


Filed December 31, 2024.    No. A-23-912.


Appeal from the District Court for Douglas County: KATIE L. BENSON, Judge. Affirmed in part, and in part reversed and remanded.

Paul J. Forney, of Forney Law Firm, L.L.C., for appellant.

A. Victor Rawl, Jr., of Gordon & Rees, L.L.P., and Margaret M. Drugan, pro hac vice, for appellee Farmers New World Life Insurance Company.

Jennifer D. Tricker and Brian Barmettler, of Baird Holm, L.L.P., for appellee Michael Powers.


BISHOP, ARTERBURN, and WELCH, Judges.

PER CURIAM.

## I. INTRODUCTION

Vaneza Ramos appeals from an order granting summary judgment in favor of Farmers New World Life Insurance Company (Farmers) and Michael Powers. Ramos contends that there are questions of material fact with respect to her breach of contract, bad faith, and negligence claims and that summary judgment was premature. Upon our review, we affirm the district court's order granting summary judgment to Powers on the negligence claim but reverse the order insomuch as it grants summary judgment to Farmers on the breach of contract claim and bad faith claim. The cause is remanded back to the district court for further proceedings.

- 1 -

## II. BACKGROUND

This case arises out of a $350,000 life insurance policy issued by Farmers to Jose David Gaytan Corpus (Gaytan). Powers, an insurance salesman, sold the Farmers insurance policy to Gaytan. Gaytan's wife, Ramos, is the sole beneficiary of the policy. After Gaytan's death, Farmers denied Ramos' insurance claim due to medical history omissions in Gaytan's application forms.

### 1. APPLICATION FOR FARMERS LIFE INSURANCE

Gaytan and Powers had known each other for several years prior to Gaytan's application for a life insurance policy from Farmers. Powers had previously sold Gaytan a life insurance policy from another company that Powers had previously represented. Over the years, Powers invited Gaytan to several business events, parties, Christmas celebrations, and similar events. Powers testified that Gaytan attended some of these events.

When Powers began selling Farmers insurance, he observed a 1-year holding period in which he did not solicit business from any of his prior clients. After the holding period ended, Powers contacted Gaytan to inquire about his insurance needs. According to Powers, Gaytan told Powers that he wanted to purchase a new life insurance policy.

On October 24, 2018, Powers and Gaytan completed an application for individual life insurance from Farmers. The application was structured as a questionnaire with two parts: "Life Application – Part 1" and "Life Application – Part 2 Medical History." Part 1 requested general background information from Gaytan, including his date of birth, height, weight, criminal history, and beneficiary information. Part 2 requested information regarding Gaytan's medical history. Part 2, section B, question 3(b) asked if Gaytan had, "in the past five years, consulted with, been diagnosed or treated by a member of the medical profession or hospitalized, or taken medication for: [c]hest pain, angina, heart attack, heart murmur, stroke or transient ischemic attack/mini stroke (TIA), irregular heartbeat/rhythm, other circulatory or heart disorder or coronary artery/disease/atherosclerosis." Gaytan responded "no" to this question. Both Powers and Gaytan signed this document, affirming that the information included was true and correct to the best of their knowledge. Powers testified that Gaytan "swore on his children that all answers [were] accurate and correct."

As part of the application process, Farmers also required Gaytan to be evaluated by a paramedical examiner. This evaluation occurred on November 7, 2018. During the evaluation, Gaytan completed a second questionnaire titled "Application for Life Insurance Part 2 – Medical History Statement." On this questionnaire, section A, question 3(a) asked if Gaytan had, "in the past ten years, consulted a [p]hysician or other [h]ealth [c]are [p]rovider, been treated, hospitalized, or taken medication for: [h]igh blood pressure, high cholesterol, heart attack, murmur, stroke, chest pain, or any other disease or disorder of the heart or blood vessels." Gaytan responded "yes" to this question. As required by the questionnaire, Gaytan elaborated on his response and stated that in August 2018, he was diagnosed with high cholesterol. Gaytan also stated that he was prescribed lisinopril to treat his high cholesterol. Both Gaytan and the paramedical examiner signed this document, affirming that all answers were true and complete to the best of their knowledge.

On November 28, 2018, Farmers approved Gaytan's application and issued him a life insurance policy with a face value of $350,000. The policy included an incontestability clause stating that Farmers would not contest the policy after it had been in force for 2 years after the

issue date. However, during the first 2 years following the issuance of the policy, Farmers reserved the right to contest the policy if "any material misrepresentation of fact is made in any applications or any amendments or supplements to applications."

## 2. CONTESTED CLAIM REVIEW

On May 31, 2020, Gaytan died. His death certificate lists COVID-19 as the cause of death. In June 2020, Ramos sought payment of Gaytan's life insurance policy and filed the necessary claim forms with Farmers. Because Gaytan died within 2 years of the issue date, the claim was contestable, and Farmers initiated a review of Gaytan's application. During this review, Farmers examined Gaytan's medical records.

Gaytan's medical records revealed that on August 5, 2018, Gaytan presented to a hospital emergency room reporting chest pain radiating into his neck, jaw, and left arm. He was diagnosed with a "ST elevation myocardial infarction involving [the] right coronary artery." His medical forms categorized his condition as a form of "cardiac failure." Gaytan required inpatient treatment from the cardiology department of the hospital. He was released on August 7. At Ramos' deposition, Ramos testified that Gaytan described his treatment as a "small surgery" due to "a plugged artery."

When Gaytan was in the hospital, Ramos sent a text message to Powers informing Powers that Gaytan was hospitalized. Powers replied, "[w]as it his heart," to which Ramos replied, "Yes." Powers responded, "I will pray." At his deposition, Powers testified that he had inquired about Gaytan's heart because Gaytan had previously informed Powers that he suffered from heartburn. Powers testified that "I should have said heartburn, but I said heart, but I meant heartburn." Powers also testified that during the application process, Gaytan denied having any medical issues, denied taking any medications, and reported that he was in "perfect shape." Powers denied knowing any material information regarding Gaytan's medical history.

Based on the medical records, Farmers concluded that Gaytan failed to disclose his history of a heart attack. On September 22, 2020, Farmers sent a letter to Ramos stating that if Gaytan's full medical history, including his heart attack, had been disclosed on the application as requested, the life insurance policy would not have been issued. Based on this determination, Farmers considered the policy to be null and void from its inception date. Farmers consequently denied Ramos' claim and issued her a check in the amount of $17,360.87 to refund the premiums paid in relation to Gaytan's policy. Ramos did not cash the check.

## 3. PROCEDURAL HISTORY

On March 22, 2022, Ramos filed a complaint in the district court for Douglas County alleging breach of contract and bad faith against Farmers and negligence against Powers. Ramos contended that Farmers failed to satisfy its contractual obligation to pay her the full amount of Gaytan's life insurance policy. Ramos also alleged that Farmers denied her claim in bad faith. Regarding Powers, Ramos alleged that he was negligent in filling out Gaytan's application forms and that such negligence gave rise to Farmers' denial of her claim. Ramos requested a minimum award of $350,000 with prejudgment and post-judgment interest and attorney fees and costs.

After conducting discovery, Farmers and Powers each moved for summary judgment. In support of their motions, they each filed a statement of undisputed facts and an evidence index. In

response, Ramos filed a single brief opposing both motions. Ramos also filed an index of evidence in opposition to the motions and included 12 exhibits. Ramos did not file a statement of disputed facts.

On September 11, 2023, the district court held a joint hearing on the motions. After the parties submitted their evidence, the court heard arguments. Both Farmers and Powers argued that Ramos' failure to provide a statement of disputed facts in accordance with Neb. Ct. R. § 6-1526(B)(2) (rev. 2022) entitled them to summary judgment. Ramos disagreed and asserted that her brief and her exhibits set forth the disputed facts of the case.

The court also heard arguments on the substantive issues of the motions. Regarding the breach of contract and bad faith claims, Farmers argued that because Gaytan materially misrepresented his history of a heart attack, Farmers was entitled to rescind the insurance contract. Thus, Farmers asserted that it was not a breach of contract to deny Ramos' claim and that Farmers did not act in bad faith by doing so. Ramos countered that Farmers had reason to know of Gaytan's heart attack and that knowledge barred summary judgment.

Regarding the negligence claim, Powers argued that Ramos could not prove that any alleged negligence he committed caused Farmers to rescind the insurance contract. Powers reasoned that the failure to disclose Gaytan's full medical history on the paramedical examination questionnaire was an independent act severing any line of causation connected to Powers. Ramos countered that the text messages between Ramos and Powers showed that Powers was aware of Gaytan's heart attack and that his knowledge of that fact barred summary judgment.

More generally, Ramos asserted that both Farmers and Powers were attempting to shift their summary judgment burdens to Ramos. She further asserted that her claims raised questions of material fact. At the conclusion of all the evidence and arguments, the court took the matter under advisement.

On November 9, 2023, the court issued its order sustaining both motions for summary judgment. Due to Ramos' failure to file a statement of disputed facts, the court considered Farmers' and Powers' statements of facts undisputed. The court concluded that in their statements of undisputed facts and supporting exhibits, Farmers and Powers alleged sufficient facts, supported by the evidence, to sustain their motions for summary judgment. The court stated that "[t]his is determinative of the motions." Nevertheless, "[i]n the name of thoroughness," the court also chose to address the motions on their merits, based solely on the evidence provided at the hearing.

Regarding Ramos' breach of contract claim, the court found that Farmers was entitled to rescind Gaytan's insurance policy because Gaytan knowingly and intentionally failed to disclose his past heart attack on his application. The court determined that Gaytan's failure to disclose was a material misrepresentation that Farmers relied upon to its own injury. The court also found that Farmers was not on notice of Gaytan's heart attack, and thus, it was reasonable for Farmers to rely on the answers in Gaytan's application.

Regarding Ramos' bad faith claim, the court found that Farmers had an arguable basis to deny her claim: had Gaytan disclosed his history of a heart attack in his application, Farmers would not have issued him a life insurance policy. Thus, the court concluded that Ramos' bad faith claim failed as a matter of law.

Regarding Ramos' negligence claim against Powers, the district court determined that Gaytan's second misrepresentation on the paramedical examination questionnaire was an

- 4 -

independent, intervening cause that broke the chain of causation between Powers' alleged negligence and Farmers' decision to void the policy. The court stated that Powers was not the proximate cause of Ramos' injury because there would not have been a life insurance policy to enforce without Gaytan's second, independent misrepresentation.

The court reiterated that Farmers and Powers were each entitled to summary judgment. Ramos' breach of contract, bad faith, and negligence claims were dismissed with prejudice. Ramos appeals.

## III. ASSIGNMENTS OF ERROR

Ramos assigns six errors which we summarize and restate into three: that the district court erred in sustaining (1) Farmers' motion for summary judgment on her breach of contract claim, (2) Farmers' motion for summary judgment on her bad faith claim, and (3) Powers' motion for summary judgment on her negligence claim. Regarding her two claims against Farmers, Ramos argues that the court erred in concluding that Gaytan had an intent to deceive and that Powers was an agent of Farmers. Regarding her claim against Powers, Ramos argues that the court erred in concluding that the second medical questionnaire was an intervening cause that broke the chain of causation.

## IV. STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## V. ANALYSIS

### 1. Ramos Properly Appealed District Court's Order

Before reaching Ramos' assignments of error, we must address the issue raised by Powers, and to a lesser extent, Farmers, of whether Ramos properly appealed the district court's order. Farmers and Powers assert that Ramos failed to assign error with the court's primary holding that because of her failure to file a statement of disputed facts, their statements of undisputed facts were uncontested, and the evidence supported summary judgment on this basis. Farmers and Powers assert that Ramos' assignments of error concern only the court's second, alternative analysis that did not consider their statements of undisputed facts. Farmers and Powers argue that Ramos' failure to assign error to the primary holding is fatal to her appeal because the court stated that its alternative analysis was done only "[i]n the name of thoroughness."

It is true that Ramos does not parse the issue of whether the two statements of undisputed facts, supported by the evidence, were sufficient to grant summary judgment for Farmers and Powers. Instead, Ramos generally asserts that summary judgment was improper in this case. While we would have preferred Ramos to more clearly articulate her assigned errors, we read her assignments to argue that even with the statements of undisputed facts, after considering the

evidence presented to the district court, there were issues of material fact that barred summary judgment. This argument takes issue with the district court's primary holding, and thus, we may reach and review that holding on appeal.

2. SUMMARY JUDGMENT

Ramos generally argues that the district court erred in granting summary judgment to both Farmers and Powers. We begin with a brief background on summary judgment. Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id.*

(a) Breach of Contract Claim

Before proceeding further, we note that in her assignments of error, Ramos actually alleges that the district court erred by granting Farmers' motion for summary judgment on her negligence claim. In oral argument, counsel for Ramos conceded that a scrivener's error existed in this assignment of error. In its brief, Farmers noted this error but stated its assumption that Ramos' assignment of error was intended to relate to her breach of contract claim. There being no negligence claim asserted against Farmers in Ramos' complaint, we likewise conclude that Ramos intended this assignment of error to relate to the district court's finding with respect to her breach of contract claim against Farmers.

In support of her position that the district court erred in granting Farmers' motion for summary judgment as it pertains to her breach of contract claim, Ramos argues that the court made determinations normally reserved for the trier of fact and that there are unresolved factual issues. Farmers asserts that these arguments have no merit because Gaytan's material misrepresentation on his application forms entitled Farmers to rescind the insurance contract as a matter of law.

Before reaching the specific arguments raised by the parties, we review contract law as it pertains to insurance policies. An insurance policy should be considered like any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993). Neb. Rev. Stat. § 44-358 (Reissue 2021) provides that:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury.

The Supreme Court has held that § 44-358 requires an insurer to plead and prove a knowing intent to deceive. See, e.g., *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984).

Consequently, for a misrepresentation by concealment to constitute a defense to an action on a contract of insurance, the insurer must plead and prove that (1) the misrepresentation was made knowingly with intent to deceive, (2) the insurer relied and acted upon such statement, and (3) the insurer was deceived to its injury. See *Lowry v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 171, 421 N.W.2d 775 (1988). A misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts. *Id.* Further, an insurer need not make an independent investigation and may rely on the truthfulness of the answers in an application for insurance as long as there was nothing to put it on notice of the falsity of any of the answers. *Id.*

It appears that neither party refutes that Gaytan's failure to disclose his heart attack was a material misrepresentation. Rather, the parties dispute whether (1) Gaytan made this misrepresentation with the intent to deceive and (2) Farmers was on notice of Gaytan's heart attack. Ramos argues that these are issues of material fact that bar summary judgment.

### (i) Intent to Deceive

We turn first to the issue of Gaytan's alleged intention to deceive. The Supreme Court has held that when an applicant makes an untrue statement with respect to a material fact within his knowledge, *the finder of fact* may, from the mere occurrence of the false statement, conclude it was made knowingly with intent to deceive. *Lowry v. State Farm Mut. Auto. Ins. Co., supra*. But whether it can be said as a matter of law that an applicant concealed facts knowingly and with the intent to deceive is less clear.

The Supreme Court has set the bar high for a knowing, intentional deception of an insurer. See *National Independent Truckers Ins. Co. v. Gadway*, 860 F.Supp.2d 946 (D. Neb. 2012). For example, in *Lowry v. State Farm Mut. Auto. Ins. Co., supra*, an automobile insurance applicant failed to disclose his prior DUI conviction and temporary license suspension to the insurance company. The Supreme Court held that it could not be said as a matter of law that the applicant had the intent to deceive based solely on the fact that the untrue statement was made. *Id.* This determination was made despite the fact that the applicant's explanation for his failure to disclose "stretche[d] the limits of credulity." *Id.* at 176, 421 N.W.2d at 779. The Court determined that the question of intent was better suited for the trier of fact. *Id.*

In this case, Farmers argues that from the mere occurrence of Gaytan's false statement (i.e., the failure to report his heart attack), the district court could conclude that the statement was made knowingly with the intent to deceive. Farmers asserts that once the court made this finding, the burden shifted to Ramos to prove that Gaytan did not have an intent to deceive Farmers. Farmers concludes that Ramos failed to present any such evidence and that summary judgment was therefore appropriate.

We disagree. While *Lowry* clearly states that a finder of fact may draw conclusions from the mere occurrence of a false statement, *Lowry* does not confer that same power to a district court ruling on a motion for summary judgment. We decline to extend that power to the district court in this case. Instead, we look to see if, based upon Farmers' statement of undisputed facts and the supporting evidence, whether Farmers made a prima facie case that Gaytan had an intent to deceive.

Viewing the evidence in a light most favorable to Ramos, we find that Farmers failed to make a prima facie case that Gaytan had an intent to deceive. Farmers' statement of undisputed facts states only that Gaytan incorrectly answered questions on his insurance applications and failed to disclose his history of a heart attack. Farmers does not set forth anything about Gaytan's knowledge of his condition or his intent to deceive Farmers. This leaves open the issue of Gaytan's intent, and it is a factual issue that is material to Ramos' breach of contract claim. Thus, we find that the district court erred in granting summary judgment to Farmers on the breach of contract claim.

### (ii) Issue of Notice

Although we have already determined that summary judgment was inappropriate on the breach of contract claim, for the sake of completeness, we also consider the issue of whether Farmers was on notice of Gaytan's misrepresentation. The district court recognized, as do we, that whether an insurance intermediary is an agent of the insured (a "broker") or an agent of the insurer (an "agent") is generally a question of fact. *Broad v. Randy Bauer Ins. Agency*, 275 Neb. 788, 749 N.W.2d 478 (2008). The Supreme Court has held that an insurance company is on notice of information that is known by its agent. See *Kracl v. American Family Insurance Group*, No. S-02-1243, 2004 WL 3741930 (Neb. Jan. 28, 2004) (unpublished opinion).

For the purposes of summary judgment, the court assumed that Powers was an agent of Farmers. Nevertheless, the court found that even in this instance, Farmers was not on notice of Gaytan's heart attack because Powers had no knowledge of Gaytan's heart attack. The court found that Powers, and consequently, Farmers, was only aware that Gaytan was hospitalized for "heart problems."

Viewing the evidence in a light most favorable to Ramos, we find that the district court erred in concluding that if Powers was an agent to Farmers, Farmers was not on notice of Gaytan's heart attack. Farmers' statement of undisputed facts does not assert that Powers did not know of Gaytan's prior heart attack. Thus, there remains an open question of what Powers knew regarding Gaytan's medical history and whether his knowledge was imputed to Farmers.

The evidence further shows that there is a genuine issue concerning what Powers knew about Gaytan's hospitalization. When informed by Ramos that Gaytan was hospitalized, Gaytan asked, "[w]as it his heart," to which Ramos replied, "Yes." Powers responded, "I will pray." This exchange is significant. Without any indication from Ramos regarding the reason for Gaytan's hospitalization, Powers immediately questioned whether the incident concerned Gaytan's heart. While we acknowledge that Powers claimed he was referring to Gaytan's history of heartburn, we determine that this fact is disputed. Powers' text messages, coupled with his history and familiarity with Gaytan, could suggest that he was more informed of Gaytan's health, medical history, and hospitalization than he has admitted.

If Powers had knowledge of Gaytan's heart attack and it was determined that he was an agent of Farmers, his knowledge would be imputed to Farmers. In that case, Farmers would be on notice of Gaytan's heart attack. For this reason, we again conclude that summary judgment on Ramos' breach of contract claim was inappropriate.

*(iii) Conclusion*

There are two issues of material fact concerning Ramos' breach of contract claim. The first issue is whether Gaytan knowingly and intentionally misrepresented his medical history on his insurance application. The second issue is whether Farmers was on notice of Gaytan's heart attack. Farmers' statement of undisputed facts and evidence on these issues was insufficient to entitle it to summary judgment. Therefore, the district court erred in sustaining Farmers' motion for summary judgment as it related to Ramos' breach of contract claim.

(b) Bad Faith Claim

Ramos alleges that the district court erred in granting Farmers' motion for summary judgment as it pertains to her bad faith claim. She asserts that her bad faith claim relies on the same unresolved material facts underlying her breach of contract claim. Farmers argues that it had an arguable basis to deny Ramos' claim: had Gaytan disclosed his heart attack on his application forms, Farmers would not have offered him a life insurance policy. Thus, Farmers concludes that summary judgment was appropriate.

To establish a claim of bad faith, a plaintiff must show the absence of a reasonable basis for denying the benefits of the insurance policy and the insurer's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. *LeRette v. American Med. Security*, 270 Neb. 545, 705 N.W.2d 41 (2005). If a lawful basis for denial exists, the insurer, as a matter of law, cannot be held liable in an action based on the tort of bad faith. *Id.* It must be determined whether, at the time of each denial, the insurer had an arguable basis on which to deny the claim, and if the insurer had such a basis, the insured's bad faith cause of action fails as a matter of law regardless of the manner in which an investigation was or was not conducted. *Id.* The question of whether a claim is fairly debatable is appropriately decided by the court as a matter of law and such a determination is based on the information available to the insurance company at the time the demand is presented. *Id.*

After reviewing the record in a light most favorable to Ramos, we find that Farmers was not entitled to summary judgment on the bad faith claim. As discussed above, the information that was available to Farmers at the time Ramos filed her claim is unclear. If it is determined that Powers was Farmers' agent and that he knew of Gaytan's heart attack, this knowledge would be imputed to Farmers. Had Farmers been on notice of Gaytan's heart attack when it issued his life insurance policy, there would not be an arguable basis to deny Ramos' claim. Because the information available to Farmers at the time of Ramos' claim is an issue of material fact, we cannot say as a matter of law that Farmers had an arguable basis to deny her claim. We therefore reverse summary judgment for Farmers on the bad faith claim.

(c) Negligence Claim

Ramos alleges that the district court erred in granting Powers' motion for summary judgment on her negligence claim. In response, Powers contends that the court correctly held that Ramos could not establish causation as a matter of law.

A plaintiff in ordinary negligence must prove all four essential elements of the claim: the defendant's duty not to injure the plaintiff, a breach of that duty, proximate causation, and damages. *Christensen v. Broken Bow Public Schools*, 312 Neb. 814, 981 N.W.2d 234 (2022). A

proximate cause is one that produces a result in a natural and continuous sequence and without which the result would not have occurred. *Hughes v. School Dist. of Aurora*, 290 Neb. 47, 858 N.W.2d 590 (2015). To establish proximate cause, the plaintiff must meet three basic requirements: (1) without the negligent action, the injury would not have occurred, commonly known as the "but for" rule; (2) the injury was a natural and probable result of the negligence; and (3) there was no efficient intervening cause. *Id.* Guess, speculation, or conjecture are not sufficient to establish causation. *Id.*

In a negligence action against an insurance agent, it is fundamental that there be causation between the negligence of the insurance agent and the damage to his principal. See *Kenyon v. Larsen*, 205 Neb. 209, 286 N.W.2d 759 (1980). The alleged act must be the proximate cause of the injury suffered by the principal. *St. Paul Mercury Ins. Co. v. Hurst*, 207 Neb. 840, 301 N.W.2d 352 (1981) (quoting *Travelers Indemnity Co. v. Center Bank*, 202 Neb. 294, 275 N.W.2d 73 (1979)). It is not enough that the harm would not have occurred had the insurance agent not been negligent. *Id.*

In the district court, and for purposes of summary judgment, Powers assumed that Ramos could prove he breached a duty not to injure her. Powers argued that even in this scenario, Ramos could not prove that his breach caused her injury, or in other words, that his negligence caused Farmers to void the insurance contract. In support of this argument, his statement of undisputed facts asserts that if Gaytan had disclosed his prior heart condition on either health history questionnaire, Farmers would not have issued the policy to Gaytan.

After viewing the record in a light most favorable to Ramos, we conclude that Ramos did not present any evidence on this issue. She does not explain how, had Powers properly assisted Gaytan in filling out his first health questionnaire, Gaytan would have received the life insurance policy. In fact, the undisputed facts show that if Gaytan's heart attack had been listed on either health questionnaire, he would have been denied coverage. This means that if Powers had not been negligent in filling out Gaytan's application forms as Ramos alleges, Farmers would have denied Gaytan coverage at the outset.

Had Ramos argued and presented evidence that Gaytan would have pursued another life insurance policy if he had been denied coverage by Farmers back in 2018, her claim of negligence may have been preserved. But there is nothing in the record indicating that Ramos made such an argument. Thus, we find that the district court did not err in granting summary judgment to Powers on Ramos' negligence claim.

## VI. CONCLUSION

Based on the record presented on appeal, we find that the district court erred in granting summary judgment for Farmers. Viewing the evidence in a light most favorable to Ramos, we conclude that there are genuine issues of material fact concerning Ramos' breach of contract claim and bad faith claim. However, we find that summary judgment for Powers on the negligence claim was appropriate. Accordingly, we affirm the district court's order granting summary judgment for Powers but reverse the portion of the order granting summary judgment for Farmers. We remand the cause to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED.

ARTERBURN, Judge, dissenting.

If I agreed that Ramos properly assigned and argued the errors listed in the majority opinion, I would likely agree with the analysis of the issues contained therein. However, I agree with Powers' and Farmers' contention that Ramos failed to assign and argue error with respect to the district court's primary holding. Therefore, I respectfully dissent from the majority opinion and would find that this fatal omission by Ramos renders us unable to analyze any further issues.

It is a well-settled principle that to be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Humphrey v. Smith*, 311 Neb. 632, 974 N.W.2d 293 (2022). In this case, the district court provided two distinct and separate justifications for the grants of summary judgment. The primary justification given by the court was that because Ramos failed to file a statement of disputed facts, the court was required to accept Powers' and Farmers' statements of undisputed facts as true. Having accepted those statements as true and having found that they were supported by other evidence, the court determined that summary judgment in favor of Powers and Farmers was proper. Though the court could have ended its analysis there, it went on to conduct a secondary analysis. Within that secondary analysis, the court found that an examination of the substantive evidence presented by the parties (without any reliance on the statements of undisputed facts) also supported the conclusion that summary judgment should be granted to Powers and Farmers. In its order, the court stated that the secondary analysis was done only "in the name of thoroughness."

On appeal, it is very questionable as to whether Ramos has assigned error to the court's primary justification for the grants of summary judgment. Ramos asserts six assignments of error which restated, are captured in the three assignments of error noted by the majority. None of her six assignments of error take issue with the court's acceptance of the statements of undisputed facts as true. However, even if I were to read her assignments as being sufficient, I find that she has also failed to specifically argue against the court's primary holding. Ramos has wholly failed to present any argument as to (1) why the district court should not have accepted as true Powers' and Farmers' statements of undisputed facts, given her failure to file a statement of disputed facts, or (2) whether those statements of undisputed facts, as supported by the additional evidence submitted, were sufficient to support the grants of summary judgment. Ramos only argues against the court's assessment of the substantive evidence submitted.

The failure to argue against the primary basis for the court's decision renders any argument regarding the secondary portion, done "in the name of thoroughness," meaningless. To secure appellate review, an appellant must both assign and argue the alleged errors made by the lower court. *Humphrey v. Smith, supra.* To reverse the district court's order, we must find error in both justifications for summary judgment announced by the district court.

Toward the close of her brief, Ramos acknowledges that the court entered its order for summary judgment based first on the failure of her trial counsel to file a statement of disputed facts, but nonetheless makes no argument that the court erred in doing so. Rather, Ramos seems to request that this court ignore this failure and only analyze whether the remaining evidence supports the alternative basis for the court's decision. This, I believe, we cannot do. For these reasons, I respectfully dissent.

- 11 -