EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, APPELLEE, V. HAROLD JOINER AND VIOLET JOINER, APPELLANTS.

384 N.W.2d 636

Filed April 11, 1986.    No. 84-907.

Ronald F. Krause of Cassem, Tierney, Adams, Gotch & Douglas, for appellants.

Raymond M. Crossman, Jr., and Franklyn K. Norris of Crossman, Norris & Hosford, for appellee.

KRIVOSHA, C.J., CAPORALE, and SHANAHAN, JJ., and GARDEN, D.J., and COLWELL, D.J., Retired.

GARDEN, D.J.

This appeal arises out of an action filed by Equitable Life Assurance Society of the United States (Equitable), plaintiff-appellee, in the district court for Douglas County, Nebraska, in which Equitable prayed for rescission of a certain lifetime medical insurance policy issued to Harold Joiner, defendant-appellant, which policy also provided coverage for Violet Joiner, wife of the insured. Equitable had rescinded the policy because the Joiners had allegedly failed to disclose certain material medical history of Violet's on the application. The Joiners' sole assignment of error is that "[t]he District Court erred in determining Plaintiff-Appellee Equitable met its burden of proving by clear and convincing evidence the Appellant Joiners were guilty of any misrepresentation made knowingly with intent to deceive under the circumstances established at trial." For the reasons set forth hereinafter we affirm.

Beginning in December 1981, Joiner attempted to contact Jack Webb, an Equitable agent, for the purposes of converting a group medical plan, under which Joiner and his wife, Violet, were covered, to an individual plan. The Joiners' group plan was issued by Equitable. Joiner testified that under the group plan Equitable provided "blanket coverage." That is to say, insureds were accepted without any physical examination or disclosure of prior medical history. Because Webb had been unavailable for several months, conversion apparently was not

possible and an application for a new policy was required.

On March 23, 1982, Webb traveled to the Joiner home and prepared an application for the Joiners. The application was prepared while the Joiners and Webb sat around the kitchen table, with Webb asking questions from the application, the Joiners responding, and Webb physically filling out the application. The application form itself is six pages in length and contains many questions concerning the applicants' health and medical history.

The pertinent questions contained in the application, of utmost relevance to the issues in this case, are the following:

B. Has this proposed covered person ever been treated for or had any indications of:

. . . .

9. Mental or Nervous Disease or Disorder? . . .

. . . .

C. Has this proposed covered person:

. . . .

13. Within the last five years, consulted a physician, or been examined or treated at a hospital or other medical facility? . . .

In regards to question 9, Webb checked the "No" box on the application. Joiner testified that when Webb approached this question, he (Webb) said to the Joiners, "I think we have all experienced this at one time or another, haven't we?" Joiner testified his answer was "either a nod or a yes." Joiner also testified that Webb had spent a great deal of his presentation telling the Joiners about his domestic difficulties. It is for this reason, Joiner argues, that Webb made this comment. Joiner further testified that "I don't feel that I was given an opportunity [to answer the question]."

Also, the only information written on the application in response to question 13 was a physical exam of Harold Joiner in 1977 and a recent hemoglobin test.

Without going into specific detail the record shows that Violet Joiner had a history of being treated by psychiatrists. She was hospitalized between the years 1961 and 1979 on four separate occasions for various psychiatric problems, for a total period of no less than 43 days. Her latest hospital stay was in

April of 1979. Her treatment throughout the years ranged from electric shock and insulin shock treatments to medication. Violet was diagnosed on separate occasions as suffering from an acute psychotic reaction, depression, and schizophrenia. Additionally, beginning in 1968 she consulted, on a regular basis, psychiatrists for the purpose of therapy. Her sessions extended up to and included one in March 1982, the month when the application was completed.

Joiner denies that he intended to defraud Equitable or knowingly give any false information. On cross-examination, in response to opposing counsel's question as to why Violet's hospitalization in 1979 had not been disclosed, Joiner testified, "It was an oversight on my part, because it was for a physical examination, and I did not recall it."

Harold Joiner's testimony concerning what transpired when the application was taken was uncontroverted. While Webb was listed as a witness in the "Order on Pretrial Conference," he did not testify at trial. Violet Joiner also did not testify, because she has since died of pancreatic cancer.

Beginning in October of 1982, Violet was hospitalized for treatment of a condition which was eventually diagnosed as pancreatic cancer. She ultimately died of the cancer and related complications in July 1983. Harold forwarded to Equitable all bills submitted by the various health care providers in connection with Violet's treatment. These bills amounted to over $38,000. Under the policy's terms, Harold argues, all but $2,000 would be covered and payable by Equitable.

Equitable sent a "Notice of Rescission" dated March 3, 1983, to Harold, stating: "Since the application failed to disclose material facts . . . the Equitable declares the above-numbered policy rescinded and null and void, and denies any liability thereunder." Specifically, Equitable denied the claims because of Violet's "Undisclosed Medical History." A check representing a return of the premiums with interest was also enclosed with the rescission notice, but acceptance of the check was refused.

In its petition filed March 24, 1983, Equitable sought rescission of the policy and alleged misrepresentation on the part of the Joiners in failing to disclose in their application

mental and nervous disorders suffered by Violet prior to the application date; that the false answers were known to be false and that the information concealed lay peculiarly within their knowledge and was offered as an inducement for Equitable to issue the policy; and that the answers were material to the risk, were relied upon by Equitable, and deceived it, to its injury. Equitable later filed an amended petition expanding its allegations of misrepresentation, setting forth in factual detail concealed hospitalizations of Violet.

In their answer to Equitable's petition, the Joiners denied allegations of misrepresentation and intent to defraud and asserted good faith in answering all questions put to them to the best of their knowledge. In their counterclaim and amended counterclaim the Joiners sought enforcement of the policy and reimbursement for medical and hospital expenses incurred by Violet.

Trial was had without a jury in the district court for Douglas County, Nebraska, on October 30, 1984, and on November 1 an order was entered, supported by separate findings, finding generally for Equitable. The Joiners' motion for a new trial was overruled.

This is an action in equity for the rescission of an insurance contract. Actions in equity are reviewed by this court de novo on the record. See Neb. Rev. Stat. § 25-1925 (Reissue 1979). However, when the evidence on material questions of fact is in irreconcilable conflict, this court will, in determining the weight of the evidence, consider the fact that the trial court observed the witnesses and their manner of testifying and adopted one version of the facts rather than the opposite. *Haumont v. Security State Bank*, 220 Neb. 809, 374 N.W.2d 2 (1985).

Joiners' sole assignment of error is that Equitable cannot rescind the policy on the basis of misrepresentation unless it proves by clear and convincing evidence the alleged misrepresentation by the Joiners was made knowingly with the intent to deceive, citing *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982). Both the statutory and case law controlling this case are well established. The policy issued to the Joiners was for sickness and accident insurance. In

*Zimmerman v. Continental Cas. Co.*, 1.81 Neb. 654, 150 N.W.2d 268 (1967), this court held that the provisions of Neb. Rev. Stat. § 44-710.14 (Reissue 1984), applying only to sickness and accident insurance, were to be read in pari materia with the provisions of Neb. Rev. Stat. § 44-358 (Reissue 1984), applying to all insurance policies. Section 44-710.14 provides that a misrepresentation which materially affects either acceptance of the risk or the hazard assumed by the insurer defeats coverage. Section 44-358 provides that a misrepresentation which exists at the time of, and contributes to, the loss and which deceives the insurer to its injury defeats coverage. We later held that in order for the insurer to deny coverage on the basis of fraud, the insurer "must plead and prove, among other things, that the misrepresentations were made knowingly with intent to deceive, that the insurer relied and acted upon such statements, and that the insurer was deceived to its injury." *White v. Medico Life Ins. Co., supra* at 905, 327 N.W.2d at 609-10.

There is no question that the Joiners made a misrepresentation to Equitable. In its order the trial court found that the Joiners, in applying for the insurance policy, represented to Equitable that Violet:

    a. had no history of mental or nervous disease or disorder when in fact she had such a history dating from 1961 and continuing through and beyond the date of March 23, 1982.

    b. had not within the preceding five years consulted a physician or been examined or treated at a hospital when in fact she had been an inpatient in a Denver hospital in April 1979 and continued to be under follow-up treatment by Dr. Crown, a psychiatrist, for a period extending beyond March 23, 1982.

Our review of the record shows that the trial court's findings were correct and that the representations made by the Joiners are not in accord with the facts, and thus constitute a misrepresentation.

The trial court, sitting as the finder of fact, found that the Joiners, in applying for the insurance policy, made statements "knowingly and with the intent to deceive plaintiff [Equitable] and related to material facts." In *White v. Medico Life Ins. Co.,*

*supra* at 906, 327 N.W.2d at 610, this court held that "when an applicant makes an untrue statement with respect to a material fact peculiarly within his knowledge, the finder of fact may, from the mere occurrence of the false statement, conclude it was made knowingly with intent to deceive."

The untrue statement in this case is the representation by the Joiners to Equitable that Violet had no history of mental disease or disorder and that she was not hospitalized within 5 years prior to the application date. This misrepresentation was also a material fact. Ralph Pisani, Equitable's underwriting section manager, testified that at the initial time of underwriting, the application is the only tool they (the underwriters) can use and rely on in evaluating the particular risk or exposure assumed by Equitable. Pisani also testified that no medical examination was required in this case and that no investigation was made by the underwriters prior to issuing the policy. Finally, Pisani also testified that had the application contained Violet's history of her 1961 hospitalization with shock treatments, her 1968 hospitalization for acute psychotic reaction, her 1970 hospitalization due to depression, her 1979 hospitalization in Denver, and the followup visits to a psychiatrist, the policy would not have been issued.

All of this information was peculiarly within the knowledge of the Joiners. Harold testified that neither he nor Violet knew Webb socially. He further testified that Webb would not have any knowledge whatsoever of the Joiners' medical background. Harold also testified that he was covered by an Equitable group policy from January 1980 to January 1981. However, no physical exam or medical application questionnaire was required for coverage.

In view of the rule espoused in *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982), and given the facts in this case, we hold that the district court did not err in finding that the Joiners intentionally made untrue statements concerning Violet's medical history. We note that while there was evidence adduced at trial that might lead another finder of fact to conclude otherwise on the issue of intent, we cannot say that the trial court's finding is contrary to law or supported by insufficient evidence.

In terms of the injury sustained by Equitable, we note that Equitable relied on the application and issued the policy. Equitable was injured to the extent it accepted an insured that it normally would not.

Joiners also argue that "[s]ince the Equitable's agent prepared this application equity dictates Appellee [Equitable] is estopped from asserting the same as a basis for its claim of rescission." Brief for Appellants at 17. We think this argument is without merit. The record shows that both Harold and Violet signed the application. Harold testified that he never read the application until after he received notice of rescission of the policy in March of 1983. In addition, the following language appeared on the inside cover of the policy:

> A copy of the application has been made a part of this policy. We issued this policy on the basis that all the answers to the questions in the application are correct and complete. Write to us within 10 days if any of the information contained in the application is not right or complete. Any incorrect or omitted information could cause us to deny an otherwise valid claim.

It is a well-established rule of law that in the absence of fraud, one who signs an instrument without reading it, when he can read and has the opportunity, cannot avoid the effect of his signature merely because he was not informed of the contents of the instrument. *Erftmier v. Eickhoff*, 210 Neb. 726, 316 N.W.2d 754 (1982), *overruled on other grounds*, *Tobin v. Flynn & Larsen Implement Co.*, 220 Neb. 259, 369 N.W.2d 96 (1985). The Joiners did not plead fraud on the part of Equitable, and none was shown. The Joiners were not prevented from reading the application either at the time they signed it or when a copy of it was attached to the policy. That being the case, the Joiners are bound by the provisions of the policy.

Joiners have raised several other issues in their brief, all of which have no merit. The judgment of the district court is affirmed.

AFFIRMED.