LINDA J. LOWRY, APPELLANT, V. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, APPELLEE.

421 N.W.2d 775

Filed April 8, 1988.   No. 86-425.

Robert F. Bartle and Tim O'Neill of Nelson & Harding, for appellant.

Patrick W. Healey of Healey, Wieland, Kluender, Atwood & Jacobs, for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and BURKHARD, D.J.

CAPORALE, J.

Plaintiff-appellant, Linda J. Lowry, brought this action to recover a death benefit under a binder of automobile insurance issued by defendant-appellee, State Farm Mutual Automobile Insurance Company, to her and her deceased husband, James M. Lowry. State Farm moved for summary judgment, claiming it had rescinded the binder ab initio because in applying for the

insurance, plaintiff's decedent misrepresented his driving history. Plaintiff appeals from the sustainment of that motion, claiming the district court erred in (1) determining that an insurer may unilaterally rescind a binder extending automobile insurance coverage, (2) determining as a matter of law that plaintiff's decedent made material misrepresentations in applying for the insurance, and (3) failing to determine that, by its dilatory and inconsistent conduct, State Farm waived any right it might otherwise have had to rescind the binder. We reverse and remand for further proceedings.

On January 3, 1985, plaintiff's decedent applied for automobile insurance coverage on two vehicles. As part of the application process, he was asked whether, during the last 5 years, the "applicant, any household member, or any regular driver: a. Had license to drive or registration suspended, revoked or refused? b. Had an accident or sustained a loss? c. Been fined, convicted or forfeited bail for traffic violations?" Decedent responded that he had received one citation for a speeding violation in April 1982. In reliance upon that response and the payment of the first month's portion of the 6-month premium, State Farm immediately bound coverage.

On January 9, 1985, the decedent, through no fault of his own, was killed while driving one of the insured vehicles.

As part of its underwriting investigation, State Farm, on January 11, 1985, obtained a report from the Nebraska Department of Motor Vehicles which revealed that decedent had speeding convictions in October 1981 and December 1982, a driving while intoxicated conviction in March 1983, and a stop sign violation conviction in June 1983. As a result of the intoxication conviction decedent paid a $200 fine, was placed on probation for 6 months, and had his driver's license "taken for 60 days." It also appears that at some time decedent had obtained "high risk" insurance coverage.

On January 23, 1985, plaintiff received a notice directed to her and the decedent advising that the second portion of the premium would become due on February 3, 1985. Plaintiff made timely payment of this portion of the premium. As noted earlier, the premium was established for a 6-month period of coverage; however, decedent had asked for and was granted the

privilege of paying that premium in monthly installments, for which privilege State Farm added a service charge. Such notices are prepared 13 days before the date the premium is due and are mailed automatically even during the period State Farm views an application for coverage to be under consideration for acceptance or rejection.

On February 4, 1985, a State Farm claim committee reviewed the matter and caused a letter to be mailed to plaintiff on February 12, 1985, advising her that because of decedent's "material misrepresentation" concerning his driving record, State Farm was "rescinding" and would "treat as void from inception any and all insurance contracted for . . . ." At the same time, State Farm returned to plaintiff all sums which had been paid on the premium.

The evidence discloses that State Farm normally does not, without prior underwriting approval, issue standard liability policies to individuals convicted of driving while intoxicated and that State Farm would not have bound the coverage in question had the fact of decedent's intoxication conviction been known to it.

Since this matter arises from the entry of a summary judgment, we are obligated to view the evidence in the light most favorable to the party against whom the motion is directed and to give that party the benefit of all reasonable inferences which may be drawn therefrom. Moreover, summary judgment is to be granted only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts, and that the moving party is entitled to judgment as a matter of law. *Schriner v. Meginnis Ford Co., ante* p. 85, 421 N.W.2d 755 (1988); *Luschen Bldg. Assn. v. Fleming Cos.,* 226 Neb. 840, 415 N.W.2d 453 (1987).

Plaintiff's first assignment of error, which claims that an insurer may not unilaterally rescind automobile liability coverage, is without merit. In drawing a distinction between cancellation and rescission, we recently reaffirmed that, under appropriate circumstances, an insurer may rescind ab initio even the limited class of automobile liability insurance policies

contemplated by Neb. Rev. Stat. §§ 44-514 through 44-521 (Reissue 1984). *Glockel v. State Farm Mut. Auto. Ins. Co.*, 219 Neb. 222, 361 N.W.2d 559 (1985), *on recertification* 224 Neb. 598, 400 N.W.2d 250 (1987).

Thus, we confront the issue presented by the second assignment, Could the trial court determine as a matter of law that decedent's failure to reveal his intoxication conviction constituted a material misrepresentation upon which State Farm relied to its detriment?

As noted in *Glockel v. State Farm Mut. Auto. Ins. Co.*, 224 Neb. 598, 400 N.W.2d 250 (1987), we have permitted rescission both under and independent of the provisions of Neb. Rev. Stat. § 44-358 (Reissue 1984), which reads:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury. The breach of a warranty or condition in any contract or policy of insurance shall not avoid the policy nor avail the insurer to avoid liability, unless such breach shall exist at the time of the loss and contribute to the loss, anything in the policy or contract of insurance to the contrary notwithstanding.

We have stated that in order for a misrepresentation by concealment to constitute a defense to an action on a contract of insurance, the insurer must plead and prove (1) that the misrepresentation was made knowingly with intent to deceive, (2) that the insurer relied and acted upon such statement, and (3) that the insurer was deceived to its injury. See *White v. Medico Life Ins. Co.*, 212 Neb. 901, 327 N.W.2d 606 (1982). See, also, *Bishop v. Farm Bureau Life Ins. Co., ante* p. 74, 421 N.W.2d 423 (1988); *Nelson v. Cheney*, 224 Neb. 756, 401 N.W.2d 472 (1987). A misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts. See, *Equitable Life Assurance Soc'y v. Joiner*, 222 Neb. 504, 384 N.W.2d 636 (1986); *White v. Medico Life Ins. Co., supra.* We have also said that an insurer need not make an independent investigation and may rely on the truthfulness

of the answers in an application for insurance as long as there was nothing to put it on notice of the falsity of any of the answers. *Omaha Nat. Bank v. Manufacturers Life Ins. Co.*, 213 Neb. 873, 332 N.W.2d 196 (1983). *Equitable Life Assurance Soc'y v. Joiner, supra*, further suggests that an insurer is injured if it accepts an insured it normally would not have accepted but for the misrepresentation.

Since State Farm does not claim that decedent's other convictions would have disqualified him from coverage, the only significant concealment was the intoxication conviction and the effect it had upon the status of decedent's license to drive. There is no factual dispute but that State Farm relied upon decedent's concealment of those facts, nor that State Farm was injured thereby as a matter of law, for it accepted a risk it would not have accepted but for the concealment of that occurrence.

Thus, the crucial question with respect to the second assignment of error is whether it can be said as a matter of law that decedent concealed those facts knowingly and with the intent to deceive. *White v. Medico Life Ins. Co., supra*, observes that when "an applicant makes an untrue statement with respect to a material fact peculiarly within his knowledge, *the finder of fact* may, from the mere occurrence of the false statement, conclude it was made knowingly with intent to deceive." (Emphasis supplied.) *Id.* at 906, 327 N.W.2d at 610. See, also, *Muhlbach v. Illinois Bankers Life Ass'n*, 108 Neb. 146, 187 N.W. 787 (1922).

Plaintiff's suggestion that decedent did not remember that he was convicted of driving while intoxicated and deprived of his driver's license as a consequence, and did not understand that such events fell within the ambit of the questions asked in the application, stretches the limits of credulity. The fact decedent acquired high risk insurance makes the suggestion particularly difficult to accept. Nonetheless, it cannot be said as a matter of law that decedent had the requisite recollection and understanding; the circumstances make the matter a question for the trier of fact. Accordingly, the summary judgment in favor of State Farm must be reversed.

While the foregoing resolution of the second assignment of

error disposes of this appeal, we, because the issue may become material during the course of further proceedings, nonetheless turn our attention to plaintiff's remaining claim, that State Farm waived any right it might otherwise have had to rescind the coverage.

The waiver argument rests upon State Farm's acceptance of a premium payment after decedent's death and its delay in advising plaintiff of its rescission for a period of 34 days after the death and 32 days after it had learned the true nature of decedent's history.

As noted in *Pester v. American Family Mut. Ins. Co.*, 186 Neb. 793, 186 N.W.2d 711 (1971), a waiver is a voluntary and intentional relinquishment of a known right; it may be established by acts and conduct from which an intention to waive may reasonably be inferred.

In *Bohannon v. Guardsman Life Ins. Co.*, 224 Neb. 701, 400 N.W.2d 856 (1987), a notation on the check tendered in payment of the premium due the current month, i.e., the month written on the check, precluded its application to the premium which had not been paid during the preceding month. We concluded as a matter of law that the insurer's acceptance of that check constituted a recognition of the continued validity of its life insurance policy as a binding obligation and that the insurer, therefore, had, as a matter of law, waived the policy provision empowering it to declare a forfeiture for nonpayment of the premium due the preceding month.

However, the situation at hand is not like that presented in *Bohannon*. The insurer in *Bohannon* attempted to do what the check it accepted specifically prohibited, apply it to a past-due premium. Since the insurer could not do that, it had the options of rejecting the check and declaring the policy void for nonpayment of the premium, rejecting that check and insisting upon payment of the past-due and current premiums, or accepting the check as tendered and thereby waiving the right to declare a forfeiture for nonpayment of the earlier month's premium. At the time the installment due notice was dispatched and the installment payment accepted in this case, State Farm had not yet decided how to treat the matter of decedent's concealment. Whether the time State Farm took to make its

decision and communicate it to plaintiff, combined with its billing for and temporary acceptance of a premium payment after decedent's death, waived its right to rescind cannot be determined as a matter of law; the circumstances present a question for the finder of fact.

State Farm's argument, that in any event neither sending the premium notice nor its temporary acceptance of that installment payment can be considered to be a waiver of any of its rights, must be rejected. State Farm premises its contention on the facts that the notice was generated by a computer programmed to prepare and dispatch such documents at a predetermined date and that such computer function is not part of its underwriting department.

The fact an entity chooses to generate its documents by electronic rather than human means provides no basis for automatic absolution of its errors, be they errors of omission or commission. State Farm is as responsible for the product of its machines as it is for the product of its people. Neither is it any answer to say that the underwriting department does not know what the billing department does; it is State Farm's responsibility to coordinate its own functions.

The summary judgment entered in favor of State Farm is reversed and the cause remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.