IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)


MUHLBAUER V. FARMERS NEW WORLD LIFE INS.


NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).


CYNTHIA MUHLBAUER, APPELLANT,

V.

FARMERS NEW WORLD LIFE INSURANCE COMPANY AND DOUG BLASING, DOING BUSINESS AS
DOUG BLASING INSURANCE AGENCY, APPELLEES.


Filed June 10, 2025.  No. A-24-408.


Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed in part, and in part reversed and remanded for further proceedings.

Thomas J. Culhane and Raymond E. Walden, of Erickson | Sederstrom, P.C., for appellant.

Michael S. Degan and Rachel A. Geelan, of Kutak Rock, L.L.P., for appellee Doug Blasing.

Margaret M. Drugan, pro hac vice, and A. Victor Rawl, Jr., of Gordon & Rees, L.L.P., for appellee Farmers New World Life Insurance Company.


BISHOP, ARTERBURN, and WELCH, Judges.

BISHOP, Judge.

## I. INTRODUCTION

Cynthia Muhlbauer's husband, John Moore, Jr., applied for a $75,000 term life insurance policy through Doug Blasing, an agent for Farmers New World Life Insurance Company (Farmers). A policy was issued in January 2021; Muhlbauer was the sole beneficiary. The policy contained an incontestability clause that allowed Farmers to contest the validity of the policy for 2 years after its issue date if any material misrepresentation was made in any documents that comprise the "Entire Policy Contract," which included applications and questionnaires. Moore

- 1 -

died in May 2022; the policy was therefore not yet incontestable. When Muhlbauer requested payment of the life insurance proceeds, Farmers denied her request based upon its investigation disclosing multiple health conditions that had not been properly disclosed in Moore's life insurance application.

Muhlbauer filed an action against Farmers and Blasing seeking judgment for $75,000, plus interest, costs, and attorney fees. Both defendants filed motions for summary judgment, which the Douglas County District Court granted. Muhlbauer appeals, contending there are genuine issues of material fact that prevent judgment as a matter of law. We affirm the district court's order granting summary judgment in favor of Blasing, but we reverse the portion of the order granting summary judgment in favor of Farmers. We remand the cause to the district court for further proceedings.

## II. BACKGROUND

The pleadings, depositions, and other exhibits reveal the following.

### 1. APPLICATION FOR FARMERS LIFE INSURANCE

On January 1, 2021, Muhlbauer sent Blasing an email to inquire about obtaining a life insurance policy for Moore. According to Blasing, Muhlbauer had been his "client" for 3 to 5 years. She carried her home, auto, and life insurance through Blasing. Her email indicated that Moore had lost his job and needed life insurance. Blasing replied to Muhlbauer's email on January 4 at 9:03 a.m., stating that he "would be happy to take a look at life insurance for [Moore]." He also asked for Moore's "approximate height and weight" and whether he had "any underlying health conditions," such as "[b]lood pressure[,] diabetes[,] etc." At 1:16 p.m., Muhlbauer responded, "His full name is John Charles Moore, Jr. He is 5 feet 6 inches, weighs 220 lbs., and has high blood pressure, and cholesterol." At 1:30 p.m., Blasing replied, "We can try a simple term for 75,000. It would be a 10[-]year term for 150 a month with no meeting a nurse or physicals and minimum underwriting. Want me to see if he is eligible?"

According to Muhlbauer, Blasing had a phone conversation with Moore and her that same afternoon between 2 and 3:30 p.m. Blasing was on speakerphone and Muhlbauer was present for about 10 minutes of the conversation. Muhlbauer did not know how long Moore remained on the line with Blasing after she left. When asked which of Moore's health conditions were discussed in the phone call, Muhlbauer responded, "My recollection is that we went over all of them; because [Moore] was there, and he was telling him. The two I specifically remember, because we had a little conversation, were the sleep apnea and the back and leg -- knee surgeries." The following colloquy also occurred during Muhlbauer's deposition:

[Counsel for Blasing]: Now, you indicated, during this phone call, that you specifically recall telling Mr. Blasing about your husband's back and knee surgery?

[Muhlbauer]: [Moore] told him. I was there.

[Counsel for Blasing]: What did [Moore] tell Mr. Blasing, during that phone call, about his back surgery?

[Muhlbauer]: He told him he'd had back surgery, that he had a bulging disc, I think, and had it repaired. He told him he had two knee replacements. The specifics and the

medical details, I don't remember. I just remember him telling him that there had been the surgeries.

. . . .

[Counsel for Blasing]: During this conversation with Mr. Blasing . . . what did he tell Mr. Blasing about his knees?

[Muhlbauer]: That they'd been replaced.

[Counsel for Blasing]: Did he tell him when?

[Muhlbauer]: He might have. I remember talking about the surgeries, and he was telling him about it. He might have; I can't say, specifically. I just remember he talked about them.

At 3:59 p.m. on January 4, 2021, Muhlbauer sent Blasing another email providing Moore's birthdate. The next morning, on January 5, at 8:48 a.m., Blasing replied, "Got it, thanks[.] Want me to see if he is eligible in the simple term product?" Muhlbauer responded, "Yes," at 9:26 a.m.

Blasing testified that, to his recollection, Moore came into his office on January 5, 2021, around "[m]id[-]morning" for 30 to 45 minutes to complete the life insurance application. Muhlbauer did not know whether Moore had gone into Blasing's office that day and, if so, what they had talked about. However, she recalled asking Moore about the policy at some point, to which he responded that it was "all taken care of."

Blasing explained that his typical procedure for completing an application involves the applicant coming into his office and sitting across from him. He then asks the applicant each question on the application and enters into the computer the responses provided to him. He acknowledged that there was no computer screen in front of the applicant and the applicant could not see Blasing's computer screen. Once the application is filled out, he has the applicant review it, and then they both sign it electronically. Blasing stated that he followed this same procedure with Moore; he asked Moore each question, entered Moore's answers into the computer, and had Moore review the completed application. He acknowledged that although the application asked for information from the applicant's driver's license regarding height, weight, and license expiration date, that in this instance, he asked Moore for that information. He did not recall Moore "pulling out his driver's license and checking." Then, they both electronically signed the application, affirming that the information included was "true and correct to the best of [their] knowledge." The time stamp on both Blasing and Moore's signatures was "10:49:25 [a.m.] GMT." Blasing was unable to explain why the time stamps were identical "to the second" and was unfamiliar with the meaning of "GMT." He stated, "I don't know how that works. I mean, I am not in charge of the e-signature process. All I know is I click it, then he clicks it." However, he did recall that "[o]nce the application is reviewed . . . it populates the e-signature."

Blasing subsequently submitted Moore's application to Farmers, along with an "agent report." One of the questions on the agent report asked, "Were all Proposed Insured/Owner(s), including children, present during the completion of the application?" Blasing responded, "N/A." During his deposition, Blasing could not recall why he answered "N/A," nor could he "even recall this document." Nonetheless, he was adamant that Moore came into his office on January 5, 2021, and that he witnessed Moore review and sign the application.

Initially, the Farmers' automated underwriting system was unable to verify Moore's identity using the information provided in his application. This was due to the "Jr." suffix in Moore's name not being entered in the correct place. This resulted in Blasing being advised to have Moore send in a copy of his photo identification and social security card.

At 11:04 a.m. on January 5, 2021, Blasing sent an email to Muhlbauer asking, "Can you email me or text me . . . a copy of [Moore's] driver[']s license and [social security] card? Or bring them in so I can make copies[.] Just need it to verify him then I will have an answer soon[.]" Another version of the same email contains an additional sentence that states, "Please have [Moore] meet me to verify." Muhlbauer emailed the appropriate documents to Blasing, who then sent them to Farmers. However, the copy of Moore's driver's license that Muhlbauer sent to Blasing listed Moore's height as 5 feet 6 inches and weight as 240 pounds, while the driver's license that was sent to Farmers listed Moore's height as 5 feet 10 inches and weight as 210 pounds. Moore's life insurance application listed his height as 5 feet 10 inches and weight as 205 pounds.

Farmers approved Moore's application on January 7, 2021. A $75,000 term life insurance policy was issued to Moore effective on January 15. Blasing received a $931.20 commission for selling the policy.

## 2. CONTESTED CLAIM REVIEW

As previously noted, the policy contained an incontestability clause that allowed Farmers to contest the validity of the policy for 2 years after its issue date if any material misrepresentation was made in any documents that comprise the "Entire Policy Contract," which included applications and questionnaires. Upon being notified of Moore's death, Farmers conducted a review of his medical records.

Moore's medical records revealed that prior to the application date of January 5, 2021, Moore was 5 feet 5 inches tall; weighed 233 pounds; had been diagnosed with high cholesterol, hyperglycemia, sleep apnea, and benign prostate hypertrophy; and had back surgery in July 2019, which included a lumbar fusion and laminectomy. Farmers concluded that none of this information was reflected in the life insurance application. However, Jen Covey, an underwriting manager at Farmers, stated in her deposition that Moore's back surgery omission was the only material misrepresentation. Part 2, section B, question 3(j) of the application asked Moore if he had, "in the past five years, consulted with, been diagnosed or treated by a member of the medical profession or hospitalized, or taken medication for: [a]rthritis, fibromyalgia, gout, back or joint pain or muscle disorder, or Lupus." The application indicated "no" to this question.

Farmers sent Blasing two questionnaires to fill out during its review of Muhlbauer's claim. Both forms required Blasing's signature "under penalty of perjury." The first questionnaire asked Blasing general questions. One question asked whether the agent solicited the coverage, or whether a proposed insured, beneficiary, or proposed owner approached him regarding a policy. Blasing's handwritten response was "insured," although he acknowledged that it was Muhlbauer who approached him about a policy for her husband. Another question asked, "Over what period of time did the proposed insured, beneficiary or proposed owner and you discuss the coverage?" Blasing responded, "1 month," even though Muhlbauer approached him on January 1, 2021, and the application was submitted on January 5. Blasing checked a box for "Yes" when asked if he witnessed the "primary proposed insured sign the application." Blasing handwrote the response

- 4 -

"NO" when asked, "Were you aware of any information which might have been material to the underwriting process, such as past medical history, which was not noted on the application? If so, please describe when and how you became aware of this information." When questioned about this response in his deposition in light of Muhlbauer's emails and the phone conversation where medical conditions were disclosed, Blasing claimed he "only went by what . . . Moore told me, not what [Muhlbauer] told me."

The second questionnaire asked more specific questions related to the underwriting department's review of Moore's medical records. It asked whether Blasing was aware or whether anything was discussed concerning Moore having "Hypertension" or "High Cholesterol" in the past 5 years. Blasing checked "No" for each condition. Blasing also responded "No" to other questions regarding his awareness of various medical conditions discovered in Moore's medical records, including when asked if he was aware or whether anything was discussed concerning Moore having back and joint pain within 5 years of the January 5, 2021, application date.

On October 26, 2022, Farmers sent a letter to Muhlbauer stating that if Moore's full medical history had been disclosed on the application as requested, the life insurance policy would not have been issued. Covey explained that for a "simple term policy," the application is "reviewed by a computer system. . . . [N]o underwriter actually looked at this case based on the type of policy it is." The "system . . . determines if [Farmers is] able to approve the policy or if it would need to be declined." Covey confirmed that there was "no human involvement" and that it was "all done by computer." When the automated system searched for prescriptions in the last 5 years, it found that Moore had prescriptions for high blood pressure, high cholesterol, and for a muscle relaxer. According to Covey, the "system" looks at various "data points" and runs it through "hundreds of rules," and in this case, "determined that even with those medications that were listed, we were able to approve the policy." Covey stated that the prescription list for Moore "was a very long list" but that the "reoccurring ones" were for high cholesterol, high blood pressure, and "occasionally" the muscle relaxants -- "[i]t wasn't very consistent."

Covey affirmed that "there was no human communication back and forth" in this process and that Farmers' involvement in the underwriting in Moore's case "was to rely on whatever [the automated system] said with regard to [his] eligibility for issuance of [Moore's] policy." She acknowledged that even though there was a discrepancy between the application indicating no high blood pressure or high cholesterol and the automated system discovering medication for high blood pressure and high cholesterol, "based on the rules" in the system, it was not "too much of a discrepancy" for the system to "still say it's okay to be approved." According to Covey, even if the application had properly indicated a history of high blood pressure or high cholesterol, the policy would have been issued.

However, Covey stated that if information had been properly provided regarding "bone and joint disorders," then the application would have been declined. She confirmed that the "bone and joint disorder" was the "only one" that was relied upon "that would have made a difference" in the policy being issued. Even though Moore's height and weight were "off," the automated system would have approved the application. But if the "bone and joint disorder question" had been answered correctly, "it would have been declined." There would not have been any follow up if the question had been answered correctly; "on this policy type," "[i]t just would have been declined." Covey stated that Moore's back surgery in the last 5 years, which she recalled involving

a laminectomy and a lumbar fusion, would fall under the question asking about "back or joint pain" and that he could have checked the box for "'disc disorder' or 'other.'" Farmers only learned about Moore's back surgery when the medical records were received in the claim's investigation. "This particular policy type, the simple term product is not one that we would ever order medical records for" even though Moore did sign a medical authorization allowing Farmers to obtain his records at the time the application was submitted.

Based on the application's undisclosed information, Farmers considered the policy to be null and void from its inception date. Farmers denied Muhlbauer's claim and issued her a check in the amount of $2,434.56 to refund the premiums paid towards the policy.

### 3. LEGAL PROCEEDINGS

On April 24, 2023, Muhlbauer filed a complaint against Farmers and Blasing, alleging that she was listed as the sole beneficiary of Moore's life insurance policy and that after he died, Farmers "refused to pay the $75,000[] death benefit to [her] despite her demand for payment." She further alleged that "Blasing acted as Farmers' agent in matters related to the [life insurance policy]" and that, based "[o]n information and belief[,] Blasing filled out the application for . . . Moore and any misstatements, if any, therein were his fault and Farmer[s'] fault." Muhlbauer requested the district court to hold Farmers and Blasing jointly and severally liable in the amount of $75,000, plus "interest . . . through March 15, 2023, and thereafter through the date of judgment." She also requested costs and attorney fees.

In response to Muhlbauer's complaint, Blasing filed a motion to dismiss on the grounds that the complaint failed to state a claim upon which relief could be granted. He argued that the allegations in the complaint were too vague to allow him to adequately defend the action. The district court entered an order denying the motion on July 31, 2023. In denying the motion, the court noted that, while Muhlbauer did not specifically identify the legal theories upon which she was relying on in her complaint, the court read the complaint "as asserting a breach of contract claim against both [Farmers and Blasing]."

Farmers filed an answer on June 21, 2023, where it raised the affirmative defense of material misrepresentation. Blasing filed an answer on August 22, 2023. In general, he argued that any damage or injury claimed by Muhlbauer was caused by Moore, as he was the one who made the misrepresentations.

On March 15, 2024, after the deadline for conducting discovery had passed, both Farmers and Blasing filed motions for summary judgment. On March 25, Muhlbauer filed a motion to reopen discovery for a limited purpose, seeking to re-depose Blasing. A hearing on the motions took place on April 2. Prior to the hearing, all parties filed statements of undisputed facts. During the hearing, numerous exhibits were received into evidence, including the depositions of Blasing, Covey, and Muhlbauer. All parties agreed that Moore's application contained misrepresentations. However, they disagreed on the source of the misrepresentations.

Farmers argued that the undisputed evidence demonstrated that the information on Moore's application was given to Blasing directly from Moore when they met on January 5, 2021; that Moore reviewed the application before it was submitted; and that Moore signed and verified the accuracy of the information contained within the application. Farmers further argued that there was no evidence that Blasing was on notice of Moore's back surgery because even if the phone

call between Muhlbauer, Moore, and Blasing had occurred, there was no indication that Blasing was informed that the back surgery occurred within 5 years of the application being signed and submitted. The only evidence presented was that Blasing was aware Moore had undergone back surgery at some point in time.

Blasing argued that he was acting as an agent of Farmers and, therefore, could not be held liable as a matter of law. He also argued that Muhlbauer could not prove damages because there was evidence that Farmers would not have issued Moore's life insurance policy if his medical history had been accurately disclosed.

Muhlbauer argued that genuine issues of material fact existed because there was evidence from which a jury could find that Blasing, not Moore, made the misrepresentations on Moore's application. She pointed to the following circumstantial evidence: the application indicated that it was electronically signed by both Blasing and Moore at 10:49:25 a.m. GMT, which Muhlbauer argued corresponds to 4:49:25 a.m. CST; the discrepancy in Moore's height and weight on the driver's license provided to Blasing by Muhlbauer and the one sent to Farmers; and the two versions of the January 5, 2021, email provided by Blasing during discovery, one of which included an additional sentence stating, "Please have [Moore] meet me to verify." Muhlbauer also contended that, contrary to Blasing's claims, he had notice of Moore's medical history. In regard to damages, Muhlbauer argued that had Moore's application been denied in January 2021, they would have looked elsewhere for coverage.

During the April 2, 2024, hearing, Muhlbauer asked the district court to consider a misrepresentation and negligence tort claim against Blasing in addition to the breach of contract claim. The court replied:

> [W]hen I entered my order on the motion to dismiss, I did describe the factual allegations in the complaint as succinct. I said that was still sufficient. But based upon the Court's reading of the complaint, I -- and although I noted you're not required to identify legal theories, based upon my reading of the complaint, it appeared that you were asserting a breach of contract claim against both defendants.

It then asked whether Muhlbauer's complaint provided fair notice of the additional claims, such as negligence or misrepresentation, to which Muhlbauer's counsel responded:

> Well, Your Honor, I guess when you're dealing with fact pleadings, you plead the facts, and then, you know, we can move to amend to conform to the evidence as it comes in at trial.
>
> And, yeah, I think there's certainly fair notice from the questions that were being asked . . . that they knew this was some claim other than the breach of contract claim.

The court then stated:

> And then just to follow-up on the question about moving to conform to the evidence, as I'm reviewing the proposed scheduling order that was signed by the Court and filed in the court file [on] September 14, 2023, the scheduling order that the parties agreed to bind themselves to did state that the parties would file any amended pleadings and shall join any additional parties to the action by not later than October 15, 2024. I suspect that

probably should be October 15, 2023, based upon my review of the other deadlines, such as folks would be ready for trial by May 1, 2024.

But assuming that the parties had intended to have the requirement that any amended pleadings be filed by October 15, 2023, what are your thoughts about that, [counsel]?

Muhlbauer's counsel responded:

Well, Your Honor, typically an amendment to conform to the evidence is made during the trial, in my experience, when evidence would come in that would support different theories that were pled.

And so I understand that the pretrial procedures do provide for amendments. I would agree with the Court. I'm not going to play games here. Clearly it was meant to be 2023, not 2024.

The district court entered an order granting summary judgment in favor of Farmers and Blasing on May 23, 2024. Regarding its decision as to Farmers, the court stated, "While the parties disagree as to the significance of the phone conversation that occurred on January 4, 2021, the events of January 5, 2021[,] are undisputed or [Muhlbauer] lacks evidence to refute the rest of the record." It stated that Moore met with Blasing on January 5; that Blasing asked Moore the questions contained in the life insurance application; that Blasing entered Moore's responses into the computer; that the application was electronically signed by Moore; and that Moore misrepresented his medical history regarding back and joint pain. It also stated that "Farmers would not have issued the policy had it been aware of [Moore's] back surgery within the five years preceding the policy's issuance." Therefore, the court concluded that there was no genuine issue of material fact regarding Moore's misrepresentation, which allowed Farmers to void the contract.

The district court also held that "Muhlbauer lack[ed] evidence that Farmers was reasonably on notice of the back operation." Regarding the phone conversation on January 4, 2021, the court noted that Muhlbauer only presented evidence that Moore told Blasing he had previously undergone a back operation and that she could not show whether Moore told Blasing when the operation occurred. It stated, "Simply knowing that [Moore] had a back operation is not material because the insurance application itself asked the question with specificity as to the time." "Absent evidence that Blasing had reason to know that such an operation occurred within the five years preceding January 5, 2021, Muhlbauer lacks evidence that Farmers was reasonably on notice of the back operation, and thus, summary judgment in favor of Farmers shall be granted."

As for Blasing's motion for summary judgment, the district court stated that Muhlbauer provided no evidence, nor did she appear to dispute, that "Blasing was acting in his capacity as an agent of Farmers at the time the application was created." It further found that Muhlbauer did not dispute that "Blasing did not bind himself personally in the insurance contract." As a result, it concluded that Muhlbauer had no cause of action against Blasing for breach of contract. In addition, the court declined to consider Muhlbauer's tort claims of misrepresentation or negligence against Blasing. It held that her complaint did "not give fair notice" to Blasing of the tort claims. It pointed out that in its July 31, 2023, order denying Blasing's motion to dismiss, it had interpreted Muhlbauer's complaint "as solely asserting a breach of contract claim against both Defendants"

and that Muhlbauer "did not at any time thereafter request leave to file an amended complaint." It observed that discovery had "since closed, the deadline to file amended pleadings [had] passed, and summary judgment motions [had] been filed." Citing to *Hayes v. County of Thayer*, 21 Neb. App. 836, 843, 844 N.W.2d 347, 354 (2014), it stated that when summary judgment has been filed, the standard is that the party seeking to amend must demonstrate sufficient evidence to show an entitlement to relief, which requires "substantial evidence" that shows a "triable issue of fact" sufficient to survive summary judgment. The court concluded that Muhlbauer had not met this standard and that "allowing an amendment to the [c]omplaint at this late date to add the torts of misrepresentation and negligence would be futile and result in unfair prejudice to the Defendants."

Muhlbauer appeals.

## III. ASSIGNMENTS OF ERROR

Muhlbauer assigns that the district court erred by granting summary judgment in favor of (1) Farmers "despite evidence that showed the existence of a material issue of material fact as to whether . . . Moore had misrepresented his medical history to obtain the life insurance policy," and (2) Blasing "despite evidence that showed the existence of a genuine issue of material fact as to whether Blasing caused his principal to wrongfully deny coverage by misrepresenting that Moore had supplied erroneous information about his medical history for the insurance application."

## IV. STANDARD OF REVIEW

An appellate court affirms a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law. *Woodward v. Saint Francis Med. Ctr.*, 316 Neb. 737, 6 N.W.3d 794 (2024). An appellate court reviews the district court's grant of summary judgment de novo, viewing the record in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Id.*

## V. ANALYSIS

### 1. GENERAL LEGAL PRINCIPLES

#### (a) Summary Judgment

Summary judgment is proper only when the pleadings, depositions, admissions, stipulations, and affidavits in the record disclose that there is no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. *Clark v. Scheels All Sports*, 314 Neb. 49, 989 N.W.2d 39 (2023). The Nebraska Supreme Court has long held that the party moving for summary judgment must make a prima facie case by producing enough evidence to show the movant would be entitled to judgment if the evidence were uncontroverted at trial. *Id.* If the moving party makes a prima facie case, the burden shifts to the nonmovant to produce evidence showing the existence of a material issue of fact that prevents judgment as a matter of law. *Id.* But in the absence of a prima facie showing by the movant that he or she is entitled to summary judgment, the opposing party is not required to reveal evidence which he or she expects to produce at trial. *Id.*

Muhlbauer states that for purposes of this appeal, "it will be assumed that both [Farmers and Blasing] made out prima facie entitlement to summary judgment on [their] defenses." Brief for appellant at 22. However, as to both defendants, Muhlbauer argues that there are genuine issues of material fact that should have precluded summary judgment.

### (b) Insurance Contract

An insurance policy should be considered like any other contract and be given effect according to the ordinary sense of the terms used, and if they are clear they will be applied according to their plain and ordinary meaning. *State Farm Mut. Auto. Ins. Co. v. Hildebrand*, 243 Neb. 743, 502 N.W.2d 469 (1993). Neb. Rev. Stat. § 44-358 (Reissue 2021) provides that:

> No oral or written misrepresentation or warranty made in the negotiation for a contract or policy of insurance by the insured, or in his behalf, shall be deemed material or defeat or avoid the policy, or prevent its attaching, unless such misrepresentation or warranty deceived the company to its injury.

The Supreme Court has held that § 44-358 requires an insurer to plead and prove a knowing intent to deceive. See, e.g., *Farm Bureau Life Ins. Co. v. Luebbe*, 218 Neb. 694, 358 N.W.2d 754 (1984).

Consequently, for a misrepresentation by concealment to constitute a defense to an action on a contract of insurance, the insurer must plead and prove that (1) the misrepresentation was made knowingly with intent to deceive, (2) the insurer relied and acted upon such statement, and (3) the insurer was deceived to its injury. See *Lowry v. State Farm Mut. Auto. Ins. Co.*, 228 Neb. 171, 421 N.W.2d 775 (1988). A misrepresentation is material if the insurer would not have issued the policy had it been aware of the true facts. *Id.* Further, an insurer need not make an independent investigation and may rely on the truthfulness of the answers in an application for insurance as long as there was nothing to put it on notice of the falsity of any of the answers. *Id.* The Supreme Court has held that an insurance company is on notice of information that is known by its agent. See *Kracl v. American Family Insurance Group*, No. S-02-1243, 2004 WL 3741930 (Neb. Jan. 28, 2004) (unpublished memorandum opinion).

### 2. FARMERS

Muhlbauer's position is that if there was any misrepresentation on the application, it was attributable to Blasing, not Moore. She contends the district court erred in granting summary judgment in favor of Farmers because genuine issues of material fact exist "as to whether [Moore] read or signed the life [insurance] application and whether he made any material misrepresentation about his medical history." Brief for appellant at 23. She argues that "Farmers' misrepresentation defense depends on Blasing's credibility in attributing the incorrect information to Moore." *Id.* at 24. Muhlbauer acknowledges that "[j]ust calling a defense witness a liar does not controvert the witness's testimony with evidence," and that she was "required to present evidence that would allow a jury to disbelieve Blasing's assertions that Moore was the source of the incorrect application statement" about the lack of treatment for any back injury within the past 5 years, and "to find instead that Blasing entered that response without Moore's approval." *Id.* at 24-25. She claims she presented "substantial circumstantial evidence" that Blasing completed the life insurance application based on information received by emails from Muhlbauer and the phone

conversation with Muhlbauer and Moore, and that it was only after further questions were raised by underwriting that Blasing then "lied about Moore being in his office and specifically reviewing every application entry and signing the form electronically in Blasing's presence." *Id*. at 25.

In support of her position, Muhlbauer claims the following evidence suggests that Moore did not review and approve the "application's responses about his medical history." *Id*. Muhlbauer points to (1) the electronic signatures having "exactly the same time to the second for their respective time stamps," which suggests Blasing "clicked to create them all simultaneously on the application form, without Moore present; (2) the "'10:49:25 AM GMT'" time stamp for the electronic signatures, which she claims when converted to "Central Standard Time" indicates the "e-signatures" were created at "4:49:25 a.m. CST, a highly unlikely time for a customer to be visiting an insurance agent's office"; (3) the application indicating "'N/A' instead of 'Yes' or 'No'" in response to the question asking if the signatures were witnessed; (4) the application containing information about Moore "that did not match the information on the driver's license that Moore presumably would have had with him had he actually been in Blasing's office," such as the difference in the license expiration date and discrepancies in Moore's height and weight; (5) the responses marked in the application being different from information provided to Blasing by Muhlbauer's emails or the phone conversation between Blasing, Moore, and Muhlbauer; and (6) the two different versions of the same email suggested Blasing was "scrambling to cover up his misrepresentations about Moore's role in the application's preparations by inserting a line to make it look like Blasing asked Muhlbauer to send her husband to his office." Brief for appellant at 27-28. Muhlbauer contends the "trial court obviously was wrong to write that 'the events of January 5, 2021[,] are undisputed" and "did not follow the legal requirement that the non-moving party be given the benefit of all reasonable inferences deducible from the evidence." *Id*. at 29.

Farmers contends that Muhlbauer is engaging in "impermissible guess, speculation, or conjecture," and that "there are no competing versions of the facts" because Blasing "testified that he met with Moore in person on January 5, 2021[,] and recorded on the application the information Moore provided to him at that time." Brief for appellee Farmers at 18. Muhlbauer "could not say, one way or other, whether Moore met with Blasing" that day, "and if he did, she had no idea what information Moore provided to Blasing during that meeting." *Id*.

We elect to focus our attention on the evidence that Blasing knew about Moore's past back surgery and whether that knowledge should have been imputed to Farmers. See *Kracl v. American Family Insurance Group, supra*, (insurance company is on notice of information that is known by its agent). The district court acknowledged that the evidence supported that Blasing was aware of Moore's past back surgery. However, it stated, "Simply knowing that [Moore] had a back operation is not material because the insurance application itself asked the question with specificity as to the time." "Absent evidence that Blasing had reason to know that such an operation occurred within the five years preceding January 5, 2021, Muhlbauer lacks evidence that Farmers was reasonably on notice of the back operation, and thus, summary judgment in favor of Farmers shall be granted." We disagree that Blasing's knowledge of Moore's back surgery is not material simply because Muhlbauer could not confirm whether Blasing was advised of when the surgery occurred.

Muhlbauer testified that on January 4, 2021, between 2 and 3:30 p.m., Blasing had a phone conversation with Moore and her where they discussed Moore's health conditions. According to Muhlbauer, Moore informed Blasing about his back surgery during this conversation. However,

she could not recall if Moore told Blasing when the surgery occurred. When asked this question during her deposition, she responded, "He might have. I remember talking about the surgeries, and he was telling him about it. He might have; I can't say, specifically. I just remember he talked about them."

The district court determined that Muhlbauer lacked evidence that Farmers was reasonably on notice of the back operation. Regarding the phone conversation on January 4, 2021, the court noted that Muhlbauer only presented evidence that Moore told Blasing he had previously undergone a back operation and that she could not show whether Moore told Blasing when the operation occurred.

However, when viewing the evidence in a light most favorable to Muhlbauer, we find that there is evidence in the record indicating that Blasing was made aware of the back surgery, as well as other medical conditions, such as high blood pressure and high cholesterol. And despite being aware of these conditions, Blasing permitted an application to be submitted to Farmers indicating no history as to those conditions. There remain questions as to Blasing's responsibility to ensure the application contained accurate information given his knowledge of Moore's past medical conditions, as communicated to him by Moore and Muhlbauer. For example, assuming Moore was in Blasing's office and responded "No" to the question about prior "bone and joint disorders" in the past 5 years, it would be reasonable to ask Blasing whether, upon hearing that response, he confirmed with Moore that the back surgery previously disclosed had not occurred in the past 5 years. Blasing's alleged knowledge of Moore's prior back surgery is relevant to whether such knowledge should be imputed to Farmers since Farmers' defense of misrepresentation allowed it to rely on the truthfulness of the answers in an application so long as there was nothing to put it on notice of the falsity of the answers. See *Lowry v. State Farm Mut. Auto. Ins. Co., supra.* And an insurance company is on notice of information that is known by its agent. See *Kracl v. American Family Insurance Group, supra*. Because a jury could conclude that Blasing knew about Moore's prior back surgery and knew of the possible falsity of the response and nevertheless allowed the inaccurate response to be submitted without further inquiry, there remains a genuine issue of material fact or inference that could be drawn from these facts as it relates to imputed notice to Farmers.

The concern in this regard is heightened by Blasing's response to the questionnaire from Farmers where he denied being "aware of any information which might have been material to the underwriting process, such as past medical history, which was not noted on the application." This question contained no time limitations as to medical conditions, and the evidence supports that Blasing did have knowledge of Moore's high blood pressure, high cholesterol, and back surgery, all of which would have been arguably material to the underwriting process. Blasing's denial of such knowledge during the course of the claim's investigation would be a relevant area of inquiry when challenging his veracity as to his knowledge of Moore's medical conditions at the time the application was submitted. We therefore conclude that the district court erred in granting summary judgment in favor of Farmers on Muhlbauer's breach of contract claim.

### 3. BLASING

Muhlbauer also claims that the district court erred by awarding summary judgment to Blasing "despite evidence that showed the existence of a genuine issue of material fact as to

whether Blasing caused his principal to wrongfully deny coverage by misrepresenting that Moore had supplied erroneous information about his medical history for the insurance application." Brief for appellant at 10. She argues that the evidence, as discussed above related to her claim against Farmers, raises "an inference of fact" that Blasing rather than Moore answered questions on the life insurance application. *Id*. at 30. Muhlbauer "has no quarrel with the general principle that an insurance agent who negotiates an insurance contract to cover someone else's risk does not by that act alone bind himself to liability for the insurer's breach of that contract." *Id*.

Blasing responds that Muhlbauer "has no evidence to support her outlandish accusations" and that she "has nothing more to show for her efforts than unsubstantiated theories based on raw speculation and conjecture, which fall far short of evidence sufficient to rebut unrebutted testimony." Brief for appellee Blasing at 9. He claims the "unrebutted testimony establishes that he personally met with Moore and gathered the information needed to complete the application directly from him" and that "Moore reviewed and signed the application before it was submitted." *Id*. Further, he contends that Muhlbauer's "sole claim against Blasing was for breach of contract." *Id*. As such, since it was undisputed that Blasing was acting as an agent for Farmers, he contends he could not be held personally liable and thus summary judgment was appropriate as to the breach of contract claim against him. We agree.

When a party contracts with a known agent acting within the scope of his or her authority for a disclosed principal, the contract is that of the principal only and the agent cannot be held personally liable thereon, unless the agent purports to bind himself or herself, or has otherwise bound himself or herself, to performance of the contract. *Broad v. Randy Bauer Ins. Agency*, 275 Neb. 788, 749 N.W.2d 478 (2008). Thus, an action for breach of contract to procure insurance is inappropriate when brought against an insurer's agent who, within the scope of his or her authority, contracted on behalf of the disclosed principal and did not bind himself or herself personally. *Id.*

Muhlbauer conceded that Blasing was acting as an agent in her complaint, statement of undisputed facts, and brief. As such, the district court properly determined that Blasing could not be held personally liable for a breach of contract claim brought against him.

However, Muhlbauer also argues:

Whether called breach of contract or the tort of misrepresentation, an insurance agent who fabricates crucial responses to an insurance application in such a way that the insurer has grounds to void the policy for the misrepresentations that the agent made can be held personally liable for the damage to the designated policy beneficiary.

Brief for appellant at 31. She asserts that the district court "said nothing [in its July 31, 2023, order denying Blasing's motion to dismiss] about the Complaint failing to state a claim for misrepresentation." Brief for appellant at 31. However, in the court's order denying Blasing's motion to dismiss, it specified that it read the complaint "as asserting a breach of contract claim against both [Farmers and Blasing]." The court further found that when read in the light most favorable to Muhlbauer, the allegations in the complaint stated "a plausible claim for breach of contract against Blasing."

Blasing points out that following the entry of the July 31, 2023, order identifying Muhlbauer's claim as one for breach of contract against him, Muhlbauer did not seek to amend her complaint "to add tort claims . . . and instead, elected to stand on her Complaint." Brief for

appellee Blasing at 11. "Only after the matter had been set for trial and the summary judgment motions fully briefed did [Muhlbauer] move to amend at oral argument on the motions." *Id*.

In the district court's order granting summary judgment, it pointed out that its July 31, 2023, order denying Blasing's motion to dismiss "interpreted Muhlbauer's Complaint as solely asserting a breach of contract claim against both Defendants" and that Muhlbauer "did not at any time thereafter request leave to file an amended complaint." It also observed that its September 14 scheduling order indicated that the deadline to file any amended pleadings was October 15, and the deadline to complete fact discovery was February 15, 2024. It added, "Neither of these deadlines were extended by any Order of the Court."

As to Muhlbauer's argument that her complaint could "plausibly be read as also asserting the torts of misrepresentation or negligence," and that she should be permitted to amend her complaint to conform to the evidence, the court found that the complaint did "not give fair notice" to Farmers and Blasing of the tort claims of misrepresentation or negligence. It also held that allowing an amendment to the complaint at that point in the proceedings would be "futile and result in unfair prejudice."

Muhlbauer contends on appeal that the pleading rules do not require pleading specific legal theories so long as the pleadings give fair notice of the claims asserted. Muhlbauer asks this court to "simply hold" that her complaint "states a cause of action against Blasing for his misrepresentations involving the application's medical history statements, and that there is evidence to support that claim that created genuine issues of material fact sufficient to defeat Blasing's summary judgment motion." Brief for appellant at 32-33.

However, under our pleading rules, claims of fraud are subject to a heightened pleading standard. *Chaney v. Evnen*, 307 Neb. 512, 949 N.W.2d 761 (2020). Citing to Neb. Ct. R. Pldg. § 6-1109(b) (rev. 2008), the Nebraska Supreme Court has pointed out that "'[i]n all averments of fraud, . . . the circumstances constituting fraud . . . shall be stated with particularity.'" *Chafin v. Wisconsin Province Society of Jesus*, 301 Neb. 94, 99, 917 N.W.2d 821, 825 (2018) (ellipses in original). Pleading facts with particularity means the who, what, when, where, and how; the first paragraph of any newspaper story. *Chaney v. Evnen, supra*.

In this case, Muhlbauer pled only that Moore purchased a life insurance policy from Farmers and that upon his death, Farmers refused to pay the $75,000 death benefit. The complaint alleged that Farmers "based its refusal on a claim that the application for the Policy contained misstatements," and that "Blasing filled out the application for . . . Moore and any misstatements, if any, therein were his fault and Farmer[s'] fault." Based upon the lack of particularity in the complaint regarding a specific claim for the tort of fraudulent misrepresentation, we cannot find error with the district court's determination that the complaint only pled a claim for breach of contract and did "not give fair notice" to Farmers and Blasing of the tort claims.

As to whether Muhlbauer should have been permitted to amend her complaint at the time of the summary judgment hearing, both appellees argue that Muhlbauer did not assign as error the district court's disallowance of her request to amend her complaint to add the tort claims of misrepresentation or negligence, and therefore, this court should not consider this argument. In Muhlbauer's reply brief, she states that she "anticipated and dealt with this argument" in her initial brief and would "not repeat that discussion." Reply brief for appellant at 13. In her reply brief, she asserts that the complaint "already adequately alleged Blasing's misrepresentations" caused the

denial of the life insurance claim. *Id*. She states that "[a]mending the misrepresentation allegations might have helped with clarity, but it was not needed for alleging a cause of action of misrepresentation." *Id*. However, as addressed above, pleading with particularity was required. Therefore, the only question remaining is whether the district court should have allowed Muhlbauer to amend her complaint. And as noted by the appellees, no error was assigned in Muhlbauer's appeal to this court regarding the court's denial of her request to amend her complaint. To be considered by an appellate court, an alleged error must be both specifically assigned and specifically argued in the brief of the party asserting the error. *Buttercase v. Davis*, 313 Neb. 1, 982 N.W.2d 240 (2022). As such, we are constrained from addressing this argument further.

## VI. CONCLUSION

For the foregoing reasons, we affirm the district court's order granting summary judgment in favor of Blasing, but we reverse the portion of the order granting summary judgment in favor of Farmers. We remand the cause to the district court for further proceedings.

AFFIRMED IN PART, AND IN PART REVERSED AND
REMANDED FOR FURTHER PROCEEDINGS.